276

STATE OF MONTANA EX REL. THE STATE BOARD OF EQUALI-
ZATION AND JOHN C. ALLEY, J. MORLEY COOPER AND
HOWARD H. LORD AS MEMBERS OF AND CONSTITUTING THE
STATE BOARD OF EQUALIZATION OF THE STATE OF MONTANA,
PLAINTIFFS, v. PETE VANDERWOOD AS COUNTY ASSESSOR
OF THE COUNTY OF LINCOLN, M. M. MANSFIELD AS COUNTY
CLERK AND RECORDER OF THE COUNTY OF LINCOLN, THE BOARD
OF COUNTY COMMISSIONERS OF LINCOLN COUNTY, MONTANA
AND AUSTIN E. FRASER, JAMES L. SLOAN AND J.
ALFRED PELTIER, AS MEMBERS OF AND CONSTITUTING THE
BOARD OF COUNTY COMMISSIONERS OF LINCOLN COUNTY,
MONTANA, DEFENDANTS.

No. 10995.
Submitted August 2, 1965. Decided September 14, 1965.
405 P.2d 652.

William A. Douglas (argued), Helena, for appellants.

Marshall Candee, County Atty., Lincoln County (argued), Libby, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding brought by the State Board of Equalization, hereinafter called the State Board, against certain Lincoln County officials, the Assessor, Clerk and Recorder and Board of County Commissioners, hereinafter referred to as the County or by the individual titles. The petition sought a Writ of Mandate to compel the County to comply with official directives of the State Board.

We issued an Alternative Writ on July 19, 1965, returnable July 26, 1965. Return and Answer were filed together with a motion to Quash the Alternative Writ. On July 26, 1965, oral argument was had with time for additional briefs granted until August 2, 1965. Briefs were filed and on August 5, 1965, we made an Order denying the Motion to Quash and directing a

Peremptory Writ of Mandamus to issue with this opinion to follow.

As revealed by the petition for the Writ, the Answer and Return and certain letters and directives, on May 6, 1964, the State Board received a letter from the Lincoln County Board of County Commissioners which stated in effect that the County would reduce its assessed and taxable valuations of all property and classes of property under the County's jurisdiction by 28.54 percent below the values otherwise established. The stated purpose of the threatened reduction was to balance (in the minds of the County officials) a 28.54 percent reduction of taxable valuations of the Great Northern Railroad which had occurred by State Board action over a period of years since 1958.

On May 18, 1964, the State Board answered the letter above-described and ordered and directed that the County refrain from taking their threatened action. The County complied.

However, the County Commissioners on July 27, 1964, adopted a resolution for what it called a "comparative economic equalization factor" to be applied for the 1965 assessment. This so-called "comparative economic equalization factor" was resolved after the County Board reviewed the assessment of the Great Northern Railway Company with reference, among other things, to the "amounts of local revenue" of the railroad. The County Commissioners reflected upon the State Board's constitutional authority in the assessment of intercounty utilities and opined, "It appears to the board [County Commissioners] although in following the procedure the State Board may conscientiously attempt to reach a value in comparative equality with values throughout the state—and it has not been demonstrated to the satisfaction of the Board such a result has been or by this method can be reasonably achieved—the valuation so established of necessity affects or may affect the comparative values of taxable property subject to local assessment."

The County then has proceeded to ignore the State Board's

directive and proceeded to cut or reduce the taxable valuations of city and town lots, suburban tracts and improvements to 30 percent of appraised value rather than 40 percent which the State Board has directed on a state-wide basis. It is patently clear that this is a deviation from the state-wide method and rate of assessment valuation established by the State Board.

Article XII, § 16 of the Montana Constitution, and R.C.M. 1947, § 84-708, provide for the State Board's duties and functions as regards railroads in more than one county.

The County, if allowed to pursue the course of action as set forth above, will void and nullify the assessments and equalization placed by the State Board of Equalization on railroad property inasmuch as the County's intent is to equalize assessments that had previously been equalized by the State Board of Equalization as expressed previously. For this reason, the County is usurping the State Board of Equalization's power and authority in not only assessing railroads, but in equalizing and adjusting the valuations between different classes of property as is provided by section 15, Article XII, of the Montana Constitution, and section 84-708, R.C.M.1947, subd. (5).

▉ Defendants further are acting in direct violation of an order from the State Board of Equalization. The case of State ex rel. State Board of Equalization v. Koch, 145 Mont. 474, 401 P.2d 765, clearly indicates that the State Board of Equalization does have the authority to issue orders and that these orders must be followed by county officials.

On this showing we issued our Alternative Writ as previously mentioned.

The Motion to Quash attacks the Alternative Writ on three main grounds:

(1) It was returnable in less than ten days as provided by Rule IV, subd. 6 of the Supreme Court;

(2) The remedy of mandamus, being an extraordinary remedy, is improper; and

(3) The authority of the State Board as opposed to the

authority of the County under the Constitution and statutes in establishing taxable valuations.

■ As to the first proposition, our rule, Rule IV, subd. 6, provides for ten days, to be sure, "unless for good cause shown a shorter time be named." We did so name a shorter time, seven days, and we fail to see where the County has been prejudiced in the least. Excellent presentation and briefs indicate the contrary.

■ As to the second ground we think a sufficient answer has already been made in State ex rel. State Board of Equalization v. Koch, 145 Mont. 474, 401 P.2d 765, supra, and in State ex rel. State Board of Equalization v. Kovich, 142 Mont. 201, 383 P.2d 818.

■ As to the third general ground, the Constitution of Montana, Art. XII, § 15, provides:

"Sec. 15. The board of county commissioners of each county shall constitute the county board of equalization. The duties of such board shall be to adjust and equalize the valuation of taxable property within their respective counties, and all such adjustments and equalizations may be supervised, reviewed, changed, increased or decreased by the state board of equalization. * * * The state board of equalization shall adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; supervise and review the acts of the county assessors and county boards of equalization; change, increase, or decrease valuations made by county assessors or equalized by county boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers. Said state board of equalization shall also have such other powers, and perform such other duties relating to taxation as may be prescribed by law."

For a discussion of the authority of the State Board, see

State ex rel. State Board of Equalization v. Koch, 145 Mont. 474, 401 P.2d 765, supra, and statutes and cases cited therein. It is clear that the State Board has the authority to issue such a directive.

The Motion to Quash was therefore denied.

■ The answer and return of the County will next be considered. It sets up two defenses The first defense consists of admissions of the allegations of the petition as to the essential facts, but denies some of the legal consequences of the facts. We think the essential facts admitted are clear from the exchange of letters and the resolution of the Board of County Commissioners previously referred to. However, the answer does assert that the assessment value directed by the Board "was in excess of the full cash value of the property so assessed." We do not give credence to this assertion however because in other parts of the answer and return it is revealed that the "full cash value" has been determined by the County, and that the State Board's directive is but a percentile, 40 percent being less than 100 percent, of that full cash value. The balance of the so-called first defense is similar to the Motion to Quash, being based upon the authority of the State Board.

The second defense, as we understand it, is that, conceding the State Board's authority to direct the County, still the State Board's directive is unlawful, and being unlawful is arbitrary, capricious and discriminatory. The unlawfulness alleged is in these particulars: (1) the State Board has not directed assessment at 100 percent of full cash value; (2) the State Board's use of different percentages within the same statutory "classes" for different "types" of property results in nonuniform and unequal assessment and taxation; (3) the State Board's assessment of inter-county utilities as previously mentioned results in unequal, unfair and discriminatory burden of taxation upon city and town lots, suburban tracts and improvements; and (4) nine other counties do not assess at 40 percent as the State Board directed; and therefore this makes the directive result in unequal taxation. Two other matters, an ap-

peal pending and the authority of County officials versus the State Board are also set up in the second defense, but we have already answered these in our ruling on the Motion to Quash.

As to the first matter, that of full cash value. The County's brief states: "If the application [for a writ of mandate] were to compel assessment at 100 percent of appraised value as full cash value, Lincoln county would have no defense (R.C.M.1947, § 84-401). But the State Board is seeking to compel adherence to a percentage established by its own fiat * * *."

R.C.M.1947, § 84-401 provides: "All taxable property must be assessed at its full cash value. Land and improvements thereon must be separately assessed."

First of all, the Montana Constitution nowhere requires property to be assessed at full market or cash value. Moreover, section 15 of Article XII provides wide powers to the State Board as previously set out. In Yellowstone Pipe Line Co. v. State Board of Equalization, 138 Mont. 603, 633, 358 P.2d 55, 70, this Court pointed out that, "In view of the general assessment situation existing today in Montana, and in view of the Board's policy of attempting to bring all assessments up to the statutory requirement of full cash value, and to equalize among the counties, we do not think that such divergencies in equalization show such discrimination as is forbidden by the Constitution. Perfect uniformity in taxation can never be achieved, and *as long as substantially the same proportion of the same type of property is subjected to taxation,* the courts will not interfere." (Emphasis added.)

The California District Court of Appeals, 2nd District, with a provision similar to our Section 15, Article XII, has ruled in two recent cases, Michels v. Watson, 229 Cal.App.2d 497, 40 Cal.Rptr. 464, and Hanks v. State Board of Equalization, 229 Cal.App.2d 520, 40 Cal.Rptr. 478.

Both of these cases dealt with suits brought by taxpayers who complained that, in the face of a California constitutional provision and statute requiring that properties be assessed at their true value in money, their properties were not being

assessed at this value, but at a percentage thereof. The California court ruled that properties need not be assessed at their true value in money, but may be assessed at a percentage thereof.

In Michels v. Watson, supra, the court looked to the long-standing practice of assessing properties at a percentage of their market value; of the California Supreme Court's acknowledgment over the last forty or fifty years that this practice existed, and, of the fact that numerous legislative sessions have convened without any act on the part of the Legislature to change this long-standing practice of assessing at a percentage of market value. The court indicates this in a summary on page 471 of its opinion, as follows:

"Relying heavily upon certain cited language in numerous decisions out of this jurisdiction, mainly, Iowa, Massachusetts, Connecticut and New Jersey, appellant argues that the term 'full cash value' means exactly what it says and there is no room for interpretation in Article XI, Section 12. While his argument might have been controlling in 1872 when Section 3627, Political Code, was enacted, or even in 1933 or 1939, the present posture of Article XI, Section 12, California Constitution, and Section 401, Revenue and Taxation Code in our revenue system admits of almost a century of administrative construction permitting the practice of fractional assessment, which has been scrutinized by tax commissions, sanctioned by the Legislature and acknowledged and accepted by appellate courts in this state."

Hanks v. State Board of Equalization, supra, attacked the problem from a different direction by holding that because the California State Board of Equalization is required to equalize the valuation of taxable property, it has the right to set assessment valuations at percentages of market value. The court's language in this regard is as follows on pages 480 and 481 of its opinion:

"Our determination of the issue whether defendant Board has a constitutional duty to raise or lower county assessment

rolls to make them conform to 100 per cent of full cash value, is controlled by Article XIII, section 9, California Constitution. The State Board's duty to equalize the level of assessments in the various counties throughout the state is derived from section 9, Article XIII. (McDougall v. County of Marin, 208 Cal. App.2d 65, 70 [25 Cal.Rptr. 107]; Baldwin v. Ellis, 68 Cal. 495 [9 P. 652]. In 1879 this constitutional provision created the state and local boards of equalization and expressed their duties and powers. Thereunder, the State Board has the 'duty * * * to equalize the valuation of the taxable property in the several counties of the State for the purposes of taxation'; and is 'authorized and empowered * * * to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll * * *.' Thus the only expressed constitutional duty of the State Board is to equalize the valuation of taxable property in the counties of the state (Art XIII, § 9). This duty is not set up in terms of equalizing at 100 per cent of market value, nor is the State Board's power to increase or lower the assessment roll so as to equalize the assessment and make it 'conform' to the true value in money of the property contained in the roll. If the State Board is required under Article XIII, section 9, to lower or raise a roll to 100 per cent of market value, as urged by appellant, why then is the State Board, in addition, separately but in the same constitutional provision, given the duty and power to equalize; for if 100 per cent of market value (true value in money) must be used, then equality and uniformity are automatically produced by raising or lowering rolls to 100 per cent of market value. Of what purpose then is the duty or power of the Board to equalize? It is exactly what the name implied—'to equalize the assessment of taxes in the several counties, so as to cause them to approximate as nearly as possible to the equality and uniformity enjoined by the Constitution.' (Savings & Loan Society v. Austin (1873), 46

Cal. 415, 473.) 'To equalize,' the court said in Wells Fargo & Co. v. [State] Board of Equalization (1880), 56 Cal. 194, at page 196, 'is to make equal, to cause to correspond, or be like in amount of degree, *as compared with something.*' Moreover, if the language used in Article XIII, Section 9, and in Article XI, Section 12, was intended to mean that all property had to be assessed at 100 per cent of market value, the State Board would not need the power to make the rolls or assessments conform to cash value because it would be bound by the 100 per cent requirement. Thus, the inference is fair that Article XIII, Section 9, was intended to permit the State Board to equalize on the basis of fractional assessments to full cash value."

We adopt the reasoning of the California Court and hold that R.C.M.1947, § 84-401, is complied with so long as the same *type* of property bears the same proportion of the tax base.

The County cites as authority for the proposition that full cash value must be assessed the case of State v. State Board of Equalization, 56 Mont. 413, 185 P. 708. It also cites that case for their contention that the Legislature must be called upon to transfer what the County calls the function of assessment from the County to the State Board. We need only point out that Article XII, § 15 was amended by the people following that case in 1922, and today gives much broader power to the State Board.

This brings us to the second contention in the second defense. We remark first that the County has changed its position from its Resolution previously referred to. There its action was based upon its disagreement with the assessment of the Great Northern Railroad over a seven-year period by the State Board. Now, however, it would compare city and town lots to grazing land, standing timber and timber lands, all within one class under R.C.M.1947, § 84-301. Thus, the County now argues that since the State Board has assigned (state-wide) different percentages as an equalization factor for *types* of property within a statutory *class* for assessment purposes its action is arbitrary. We shall answer the contention.

As previously pointed out, the State Board has the power and the duty to equalize the assessment of properties at a percentage of their market value. To limit the State Board to usage of classes would be a limitation of the Board's powers to equalize and adjust. Properties within classes are of different type, character and use. As we pointed out in the Yellowstone Pipe Line Company case, supra, it is the *type* of property that must be uniformly taxed, the designation by Class as in R.C.M. 1947, § 84-301, being directory.

The County makes much of a distinction between assessment and equalization. As we held in State ex rel. State Board of Equalization v. Koch, supra, the constitutional provision, Art. XII, § 15, gives the State Board authority to "exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers." In the Koch case, one of the necessary things was the issuance of a directive just as here. Thus, any distinction between assessment and equalization is aside from the problem here.

The third matter in the second defense has already been answered. The fourth matter, that nine other counties do not yet follow the Board's directives needs no answer. That is like saying that because one violates a law, everyone may.

Having considered the matters, we hold that the directive of the State Board must be complied with.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE concur.