134

STATE OF MONTANA ex rel. STATE BOARD OF EQUALIZATION et al., Relators, v. STANLEY V. PRICE et al., Respondents.

No. 12037.
Submitted March 28, 1971.
Decided April 1, 1971.
483 P.2d 284.

Edward Jene Bell (argued), Helena, for appellants.

L. D. Jungers, Deputy County Atty., Fort Benton, Dola Wilson, Jr., Special Asst. County Atty., (argued), Great Falls, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding petitioned for by the State Board of Equalization directed to Chouteau County and its assessor, clerk and recorder, and board of county commissioners. We issued an alternative writ of mandate on ex parte application which in pertinent part commanded:

"1. (a) Immediately discontinue illegal application of the 20 percent reduction to appraised market value of urban land and urban and rural improvements;

"(b) Immediately discontinue illegal application of any percentage reduction to appraised market value of rural improvements other than rural residences;

"(c) Immediately discontinue illegal application of the 30 percent reduction to appraised market value of rural improvements including rural residences; and

"(d) In lieu of the percentages ordered discontinued in parts (a), (b), and (c) above, that Chouteau County determine and compute assessed value of all urban land and urban and rural improvements, other than rural residences, by applying only 40 percent to appraised market value, and determine and compute assessed value of all rural residences by applying only 40 percent to the 80 percent of the appraised market value of comparable residences in Fort Benton, Montana; and that the determinations and computations of the assessed values ordered herein be implemented and made effective for the 1971 assessment year and for all subsequent assessment years;

"2. Initiate immediately and proceed expeditiously with an urban and rural improvements reappraisal program to the end that all urban land and all urban and rural improvements will

be reappraised at current market value for the 1976 assessment year, such reappraisal program to be accomplished by reappraising approximately one-fifth (1/5) of all the properties in each year;

"3. Initiate immediately and proceed expeditiously with a land reclassification program to the end that:

"(a) the average level of grading and assessment of grazing land be increased by at least one grade for the 1972 assessment year and be maintained current at statewide standards as determined by the State Board of Equalization; and

"(b) the non-irrigated farm lands be regarded on the basis of their average production for the immediately past twenty-year period and that the resulting county average grading used for assessment be increased by at least two grades for the 1972 assessment year, all of which is in compliance with the State Board of Equalization's Amended Order to Respondents dated August 19, 1970."

On March 15, 1971, the respondents made a return and answer and filed a motion to quash. Oral argument was had and the respondents granted further time to file briefs.

The return and answer will be commented on. The county board would appear to deny the State Board's authority entirely. We treat this as mere sham. The county board would also appear to deny the Constitutional authority, statutory authority, and case law interpretations of this Court concerning the State Board's authority and duties. Again, we treat this as mere sham. Certain other denials and assertions concerning a hearing held by the State Board on January 19 and 20, 1970, were made. As a result we ordered the State Board to file a transcript of that hearing together with exhibits. As a matter of fact, the return and answer alleged the said hearing to have been "a sham and a pretense and a denial of due process of law." We shall comment further on this later.

The facts are that pursuant to the 1957 Appraisal and Re-

classification Act, sections 84-429.7 through 84-429.13, R.C.M. 1947, the State Board of Equalization issued a directive on November 14, 1963 which established a uniform rate of assessment between properties in different counties. On June 18, 1969 said Board issued a letter which revised the directive with respect to grading and valuation of non-irrigated farm land. Chouteau County has refused to comply with the directives of said Board. In 1963 the State Board of Equalization first discovered that Chouteau County was not in compliance, and from then to 1969 the Board held numerous meetings with Chouteau County officials for the purpose of implementing changes in their appraisal and classification program.

In 1969 the Board decided that Chouteau County would comply only if forced to do so, and therefore the Board issued a notice of hearing on July 18, 1969 for the purpose of determining the extent of noncompliance by Chouteau County. That hearing was permanently enjoined by the district court on application of Chouteau County; however, this Court quashed and set aside the injunction by granting a writ of prohibition in State ex rel. Lord v. District Court, 154 Mont. 269, 463 P.2d 323.

Thereafter, the Board issued notice of hearing on December 30, 1969, and held the hearing in Fort Benton, Montana on January 19 and 20, 1970. From the testimony and evidence introduced at the hearing, the Board found extensive noncompliance by Chouteau County and subsequently issued its order dated April 3, 1970 commanding Chouteau County to comply with the directives and letters of the Board. The Board issued its amended order dated August 19, 1970, which more specifically detailed the extent of its orders resulting from the hearing held in January. By letters dated May 21, 1970 and June 15, 1970, Chouteau County refused to comply with the Board's order. On or about January 18, 1971, transmitted by telephone conversation between the Chouteau County Attorney and the tax counsel for the Board, Chouteau County

again refused to comply with the Board's order. Although asked to do so, Chouteau County has not written a letter to the Board detailing its latest refusal to comply.

The above facts clearly show that the respondents are violating Montana law and directives of the Board. The Constitution and the laws of the state of Montana grant the Board the powers and duties which it is seeking to enforce by this action, and mandamus is the proper remedy for such enforcement.

Article XII, Sec. 15 of the Constitution of the state of Montana specially requires the State Board of Equalization to:

"* * * adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; supervise and review the acts of the county assessors and county boards of equalization; change, increase, or decrease valuations made by county assessors or equalized by county boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers. Said state board of equalization shall also have such other powers, and perform such other duties relating to taxation as may be prescribed by law."

The Revised Codes of Montana, 1947, grant the Board the following powers and require it to perform the following duties:

"84-708. Powers and duties. It shall be the duty of the board and it shall have power and authority in addition to any authority under the present statutes:

"(1) To prescribe rules and regulations, not in conflict with the constitution and laws of the state of Montana, to

govern county boards of equalization and the assessors of the different counties in the performance of their duties.

"*　　*　　*　　*　　*　　*　　*

"(5)　To adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; supervise and review the acts of county assessors and county boards of equalization; change, increase or decrease valuations made by county assessors or equalized by county boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties between the different classes of property and between individual taxpayers.

"(6)　To have and exercise general supervision over the administration of the assessment and tax laws of the state, and over assessors, county boards of equalization, boards of county commissioners, and other officers of municipal corporations, having any duties to perform under any of the laws of this state relating to taxation to the end that all assessments of property be made relatively just and equal at true value in substantial compliance with law　*　*　*."

"84-429.12.　Classification and appraisal—general and uniform methods. It is hereby made the duty of the state board of equalization to implement the provisions of this act by providing:

"1.　For a general and uniform method of classifying lands in the state of Montana for the purpose of securing an equitable and uniform basis of assessment of said lands for taxation purposes.

"All lands shall be classified according to their use or uses and graded within each class according to soil and productive capacity. In such classification work, use shall be made of

soil surveys and maps and all other pertinent available information. All lands must be classified by forty (40) acre tracts or fractional lots.

"2. For a general and uniform method of appraising city and town lots.

"3. For a general and uniform method of appraising rural and urban improvements.

"4. For a general and uniform method of appraising timber lands."

These above quoted constitutional and statutory provisions clearly require the State Board of Equalization to do all things necessary to secure a fair, just and equitable valuation of all taxable property among the counties, and between the different individual taxpayers. To accomplish uniformity among the counties and between individual taxpayers, the Board has established statewide methods and rates of appraisal and classification, as revealed by its directive dated November 14, 1963.

Uniformity of taxation was held necessary as a prerequisite to a proper assessment in Yellowstone Pipe Line Co. v. State Board of Equalization, 138 Mont. 603, 358 P.2d 55, and State ex rel. State Board of Equalization v. Vanderwood, 146 Mont. 276, 405 P.2d 652. Respondents, by deviation from the statewide methods and rates established by the Board's directives and by refusal to comply with the Board's directives, are arbitrarily violating the laws of Montana and the legally issued directives of the State Board of Equalization.

█ The Board is clearly granted the power to hold hearings and issue its order in accordance therewith when it contemplates changing the assessed value of property in a county under the authority of section 84-710, R.C.M.1947, which provides in part as follows:

"* * * When the state board of equalization shall contemplate raising or lowering the assessed valuation of any one or more classes of property in any county, it shall give

notice of its contemplated action to the board of county commissioners of the county in which such class or classes of property is situated, in such manner as it shall deem proper and sufficient, and shall fix a time and place within the county in which such change of assessment is proposed for a hearing thereon; provided, however, that if the change affects one or more classes of property common to more than one county the board shall fix the time and place of hearing so as to accommodate the counties interested. At the time and place fixed for such hearing any taxpayer or any officer of any municipal corporation interested therein may appear and be heard."

See State ex rel. State Board of Equalization v. Koch, 145 Mont. 474, 480, 401 P.2d 765; State ex rel. State Board of Equalization v. Vanderwood, supra, 146 Mont. p. 279, 405 P.2d 652; State ex rel. Lord v. District Court, supra; and Mittelstadt v. Buckingham, 156 Mont., 407, 480 P.2d 831, 28 St.Rep. 117. Respondents are required by the above-cited cases to comply with directives of the Board, and they are also required to maintain current their classification of all taxable lands and appraisal of city and town lots and rural and urban improvements under the provisions of section 84-429.7, R.C.M.1947.

Not only is the remedy of mandamus the proper remedy for this action, as was so held in State ex rel. State Board of Equalization v. Kovich, 142 Mont. 201, 383 P.2d 818; State ex rel. State Board of Equalization v. Koch, supra, and State ex rel. State Board of Equalization v. Vanderwood, supra, but because of the delaying tactics employed by respondents and the emergency situation existing if respondents are forced to comply with the appraisal requirements for 1971 of Section 1 of the Board's amended order dated August 19, 1970, the remedy of mandamus is the only speedy and adequate remedy available to the Board which will fully terminate the hindrance, delay and noncompliance by respondents.

We now refer back to the hearing held on January

19 and 20, 1970, which was described by the county board in its answer and return as "a sham and a pretense and a denial of due process of law." We have read the record, found complete proof of the allegations of the State Board, even from the witnesses produced by the county. We have found the Board allowed broad, oh so broad, cross-examination by the county's counsel of all the witnesses. In all ways the record of the hearing demonstrated conclusively that it was not a sham, it was not pretense, and there was no denial of due process. The record amply supports the contentions of the State.

In view of what has been heretofore said concerning the answer and return being in part a sham, and in view of the hindrance, delay and noncompliance of the county officials, after being encouraged, cajoled and led by the hand, this Court will entertain consideration of good faith and application for costs and damages as set forth in section 93-9112, R.C.M.1947, if there be further delay or avoidance of the duty imposed.

For the foregoing reasons and law, the alternative writ heretofore issued is made permanent. It is so ordered.

MR. JUSTICES HASWELL, JOHN C. HARRISON and DALY, concur.