STATE OF MONTANA EX REL. ED CONRAD ET AL., RE-
LATORS, v. RAY MANAGHAN, ASSESSOR OF FLATHEAD COUN-
TY, MONTANA ET AL., C. W. REYNOLDS, AS ASSESSOR OF
LAKE COUNTY, MONTANA ET AL., KAY RUTH BAENEN, AS
ASSESSOR OF LINCOLN COUNTY, MONTANA ET AL., MARY K.
NOONAN, AS ASSESSOR OF MINERAL COUNTY, MONTANA ET AL.,
PAUL J. FARLAN, AS ASSESSOR OF SANDERS COUNTY, MON-
TANA ET AL., JOHN C. ALLEY, J. MORLEY COOPER AND
RAY J. WAYRYNEN AS MEMBERS OF BOARD OF EQUALIZATION
ET AL., RESPONDENTS.

No. 12072.
Submitted June 2, 1971.
Decided June 7, 1971.
485 P.2d 948.

Risken & Scribner, A. William Scribner, argued, Helena, Robert N. Helding, argued, Missoula, for relators.

William A. Douglas, County Atty., argued, Libby, M. Dean Jellison, argued, Kalispell, E. Jene Bell, argued, State Bd. of Equalization, Helena, James Oleson, County Atty., Kalispell, Richard P. Heinz, County Atty., Polson, Walter T. Murphy, County Atty., Superior, Alex C. Morrison, County Atty., Thompson Falls, for respondents.

PER CURIAM:

This is an original proceeding seeking a declaratory judgment and ancillary relief by injunction or other appropriate writ to compel valuation and assessment of timberlands for taxation in five counties of northwestern Montana as directed by the State Board of Equalization and to prohibit county tax officials from employing a different valuation and assessment.

Relators are ten owners of timberlands located in one or more of the five counties involved. They have brought the instant class action on behalf of themselves and all other owners of

timberlands in the five counties. Respondents are the respective county assessors and board of county commissioners in Flathead, Lake, Lincoln, Mineral, and Sanders counties. Also named as respondent is the State Board of Equalization.

The basic occurrences forming the background of the present suit are not in dispute. On October 9, 1967, the State Board of Equalization issued a directive setting forth a comprehensive formula for the computation of values of timberlands and prescribing the use of such formula as a basis for assessment of such lands for ensuing taxable years. This formula applied to all counties except Flathead which adopted a different system with the approval of the State Board of Equalization; this separate system resulted in assessments substantially in line with those obtained by the Board formula. In our view, the position of Flathead County in this appeal is no different from the other counties involved.

On or about September 5, 1969, the State Board of Equalization held a hearing in Missoula for the purpose of considering an increase in the assessment of timberlands. Thereafter on November 19, 1970, the State Board of Equalization issued a directive authorizing the counties to increase the values of timberlands by the addition of land values according to accessibility and topography classification as follows: favorable classification—an authorized increase of $1.65 per acre; average classification—an authorized increase of $1.00 per acre; difficult classification—an authorized increase of 40¢ per acre. Under the provisions of the directive, the increases are authorized to be added to the assessed valuations computed by the previous formula and are to be applied for the tax year 1971.

The commissioners of the five northwestern Montana counties involved in the present action expressed their disapproval and rejection of this directive and have indicated their intention to increase the assessment at rates far higher than those authorized by the State Board of Equalization, to wit: favorable classification—an increase of $7.50 per acre; average classification—

an increase of $4.50 per acre; and difficult classification—an increase of $1.50 per acre.

The crux of the counties' contention is that the November 19, 1970 directive of the State Board of Equalization authorizing the increases in valuations of timberland therein contained is not supported by the evidence adduced at the hearing of September 5, 1969 in Missoula; that the authorized increases are accordingly arbitrary and invalid; and therefore the counties are not required to conform to it. Additionally the counties claim that they are empowered by the provisions of sections 84-429.11 and 84-602, R.C.M.1947, to establish their own higher assessed valuations.

The foregoing facts are undisputed and control the disposition of the present controversy as a matter of law. The underlying legal issue posed by these facts is simply this: What are the respective powers and duties of the State Board of Equalization, on the one hand, and the boards of county commissioners of the affected counties, on the other hand, concerning the assessment of timberlands for taxation?

■ Before proceeding to decision of this ultimate legal issue, some preliminary procedural matters must be resolved. First, we hold that this Court should accept original jurisdiction of this proceeding because of the urgency of the situation and the need for speedy determination of the controversy. We cite the following cases as authority for the assumption of original jurisdiction under such circumstances: Forty-Second Legislative Assembly v. Lennon, 156 Mont. 416, 481 P.2d 330; State ex rel. Schultz-Lindsay v. Bd. of Equal., 145 Mont. 380, 403 P.2d 635; State ex rel. Livingstone v. Murray, 137 Mont. 557, 354, P.2d 552; Sawyer Stores, Inc. v. iMtchell, 103 Mont. 148, 62 P.2d 342.

■ Secondly, we hold that relators as affected taxpayers, have standing to bring a declaratory judgment action concerning a tax controversy, and are not confined exclusively to payment of taxes under protest and a suit for recovery. Brophy Coal Co. v. Matthews, 125 Mont. 212, 233 P.2d 397; N. W. Imp. Co. v.

Rosebud Co., 129 Mont. 412, 288 P.2d 657; State ex rel. Fulton v. District Court, 139 Mont. 573, 366 P.2d 435. A true class action for this purpose is authorized by Rule 23, M.R.Civ.P.

The powers and duties of the State Board of Equalization in the present controversy are defined in broad terms in Article XII, Sec. 15 of the Montana Constitution. There the State Board of Equalization is commanded to ''adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable property in any county and in the several counties and between individual taxpayers; supervise and review the acts of the county assessors and the county boards of equalization; change, increase, or decrease valuations made by county assessors or equalized by county boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers * * *.''

These broad powers have been refined by the legislature in the Classification and Appraisal Act of 1957 to include the establishment of a specific method or formula for appraising timberlands. Section 84-429.12, R.C.M.1947 provides in pertinent part:

''It is hereby made the duty of the state board of equalization to implement the provisions of this act by providing:

  *  *  *  *  *  *

''4. For a general and uniform method of appraising timberlands.''

Pursuant thereto, the State Board of Equalization has adopted what it considers to be a general and uniform method of appraising timberlands throughout the state. These are encompassed within its 1967 directives, its approval of a separate system providing similar results for portions of Flathead County, and its directive authorizing increases in valuations dated November 19, 1970. This Court has repeatedly upheld the authority of the State Board of Equalization to issue and enforce such directives, and has denied individual counties the right to depart

therefrom. State ex rel. Board of Equlization v. Price, 157 Mont. 134, 483 P.2d 284 (requiring Chouteau County to follow the statewide method established by the Board for appraising urban land and urban and rural improvements) ; State ex rel. Bd. Equal. v. Koch, 145 Mont. 474, 401 P.2d 765 (requiring Yellowstone County to comply with a Board directive concerning valuation of grades of irrigated farm land) ; State ex rel. Board of Equal. v. Vanderwood, 146 Mont. 276, 405 P.2d 652 (requiring Lincoln County to comply with a Board directive concerning valuation of urban land and improvements).

██ However, here the counties contend that the directive of the State Board of Equalization dated November 19, 1970 is invalid because the evidence adduced at the Missoula hearing of September 5, 1969 does not support it. Therefore, they argue, the counties are not required to comply with it and may set up their own valuation increases on timberlands, citing State ex rel. Bd. of Equalization v. Kovich, 142 Mont. 201, 383 P.2d 818, in support.

This contention fails for two reasons. First, although the *Kovich* case indicated that "due process" must be observed in the hearings forming the basis of such directives and that if it is not the State Board's directives are illegal and unenforceable, it does not hold that such directives can be ignored without prior adjudication of their invalidity. If counties were free to ignore such directives on the basis of claimed invalidity without adjudication thereof, utter chaos in the state's taxation system would be the inevitable result, and a premium would be placed on defiance during the process of litigation. Even in the case of spurious claims of invalidity of such directives, taxes would be forever lost to the counties if their claims were not finally upheld, and other taxpayers would have to shoulder a disproportionate share of the cost of government during the period of such litigation. Surely, this is not the constitutional and statutory taxation system in Montana.

██ Secondly, and perhaps more importantly, the counties are not granted the powers of increasing valuations and ap-

praisals on timberlands that they seek to exercise here. Sections 84-429.11 and 84-602, R.C.M.1947 do not grant them such power. Section 84-429.11 simply provides for mailing notice of classification and appraisal of improvements and sets up an appeal procedure to county boards of equalization. Section 84-602 simply provides for equalization of taxes by county boards of equalization; thereunder the county must comply with State Board of Equalization directives. State ex rel. State Board of Equalization v. Koch, supra.

H.B. 345 introduced in the last session of the legislature would have added the duty of appraising taxable timberlands to the powers of the boards of county commissioners, but it failed to pass. Thus, irrespective of what the powers of the State Board of Equalization may be, the boards of county commissioners of the various counties simply have no authority to increase the appraisals of taxable timberlands in their respective counties on their own volition and authority as against State Board directives.

Thus, the absence of authority in the boards of county commissioners to proceed with their intended increases furnishes the basis for the issuance of a writ of prohibition. Additionally, until adjudication of the invalidity of the State Board's order of November 19, 1970, the declaratory relief sought by relators must be granted. As the respective counties wish to utilize extensive discovery procedures on this issue, the district court is clearly the proper forum for pursuit of such adjudication.

Relators are hereby granted a declaratory judgment that the directive of the State Board of Equalization dated November 19, 1970 is valid and enforceable until such time as the final judgment of a court of competent jurisdiction decides otherwise, all without prejudice to adjudication of this issue in the district courts of this state. Additionally, let a writ of prohibition issue forthwith commanding the assessors and boards of county commissioners of Flathead, Lake, Lincoln, Mineral and Sanders counties to value and assess timberlands in their respective counties for the taxable year 1971 in accordance with the direc-

tive of the State Board of Equalization dated November 19, 1970.

The award of costs being discretionary, each party shall bear its own cost.