No. 82-497

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

JOHN C. and RUTH HANLEY, DORIS A. KROPP,
LORETTA L. UBER, et al.,

Plaintiffs and Appellants,

-vs-

THE DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Clary & Clary; Thomas Clary argued, Great Falls,
Montana

For Respondent:

Larry Schuster argued, Dept. of Revenue, Helena,
Montana

---

Submitted: September 16, 1983

Decided: December 22, 1983

Filed: DEC 22 1983

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is a continuation of what has been tabbed the "34%" property tax controversy, which has been brewing in this state for several years. A group of Cascade County taxpayers brought this petition for declaratory judgment and writ of mandamus seeking reinstatement of property values which had been set by the county tax appeal board in 1980 and subsequently raised by the Department of Revenue. From the District Court's order denying the petition this appeal is taken.

In 1975, the Montana legislature instituted a new procedure for appraisal of all taxable property in Montana. Section 15-7-111, MCA, provides an "appraisal cycle" approach to revaluation of taxable property. Over a five year period or cycle, all taxable property in the state is to be appraised and its value updated. Once the property values are set, they are to remain stationary until the next cycle begins and new values are set. This procedure was enacted to comply with the Montana constitutional mandate that the state, through the Department of Revenue, ". . . shall appraise, assess and equalize the valuation of all property which is to be taxed in the manner provided by law." 1972 Constitution of the State of Montana, Article VIII, Section 3.

The present cycle began in 1978 and will be completed in 1985, a two year extension having been granted by the legislature in 1981. Chapter 350, Section 3, Laws of Montana (1981). The properties which are the subject of this appeal are "Class 4" properties as defined in Section

15-6-134, MCA, and include both residential property and commercial improvements to real property. The appraisals of "Class 4" property conducted by D.O.R., were done pursuant to the valuation guidelines from two different appraisal manuals. Residential property was appraised from the 1972 Montana Appraisal Manual and commercial improvements were appraised from the 1976 Marshall-Swift Appraisal Manual. The use of different manuals gave rise to the "34%" controversy which has plagued D.O.R. since 1978.

After the cycle commenced, it became apparent to taxpayers across the state that the relative values of similar "Class 4" properties were not always comparable. Several appraisals were contested before various county tax appeal boards; the taxpayers contending that the appraisal values reached by using the Marshall-Swift manual were on the average much higher than the appraisal values reached by using the Montana Manual. In 1980, appellants contested their valuations before the Cascade County tax appeal board, and were granted a 34% reduction from their 1978 assessed values, to be effective through the remainder of the current appraisal cycle. D.O.R. did not appeal this decision.

Approximately the same time appellants' reductions were granted, a change of policies and personnel took place at D.O.R. A new Director was appointed and it was soon acknowledged by D.O.R. that there was a disparity between the relative values resulting from use of the different manuals. Attempting to find an adequate solution, D.O.R. consulted local officials, county commissioners and school boards to seek advice. From these discussions and the recommendation of a D.O.R. appraiser, it was determined that

the disparity averaged approximately 12%. In June of 1981 a proposed stipulation agreement was sent by D.O.R. to each taxpayer with an appeal of the commercial valuations pending before a county tax appeal board, offering a 12% reduction from the 1978 values. Several taxpayers accepted this offer, but appellants and the majority of those contacted did not.

It was apparently felt by D.O.R. that the sporadic responses were not solving the problem. Thus a directive was issued to each county assessor in the state ordering that all values of commercial property reached by use of the Marshall-Swift manual be returned to their 1978 values and reduced by 12%. Effective January 1, 1982, this rollback was to take place regardless of whether the particular property values were the subject of past or present appeals or were not being contested at all. This directive applied to appellants' property and had the net effect of raising their property values by 22%.

Appellants appealed this rollback to the Cascade County tax appeal board. At the same time appellants filed this action in District Court seeking a declaratory judgment that the procedure instituted by the directive was illegal and improper and a writ of mandamus requiring D.O.R. to return the appraised values of appellants' property to those set by the Cascade County tax appeal board in 1980. Briefs were filed and the matter was heard before Judge R.D. McPhillips. Findings of fact and conclusions of law were entered and the petition was denied. Appellants moved to amend the findings and conclusions or in the alternative grant a new trial. After reviewing additional briefs and

hearing oral arguments, the motion was denied. This appeal is taken from the order denying appellants' petition.

Three issues are raised for consideration:

(1) Can D.O.R. circumvent the county tax appeal board's decision within the appraisal cycle, or is it precluded from doing so by A.R.M. 2.51.307(3) (Admin. Rules of Montana)?

(2) Are appellants precluded from raising the first issue for failure to raise it at the District Court level?

(3) Should the District Court have required D.O.R. to return the valuations of appellants' property to those granted by the Cascade County tax appeal board in 1980?

Our answer to the second issue disposes of the first issue, which will not be discussed. Appellants argue that D.O.R. should not be allowed to change the valuations of their property because it did not appeal the 1980 Cascade County tax appeal board ruling. A.R.M. 2.51.307(3) (Admin. Rules of Montana) would seem to require such a holding as it is a restatement of the doctrine of res judicata adapted to fit the purposes of the state and county tax appeal boards. However, D.O.R. correctly contends that since appellants did not raise this theory in the District Court, they may not do so on appeal.

It has long been the rule in Montana that a legal theory raised for the first time on appeal will not be considered by this Court. Chamberlain v. Evans (1979), 180 Mont. 511, 591 P.2d 237. Appellants' petition for declaratory judgment and writ of mandamus alleged that D.O.R. had improperly reappraised or reassessed their property within the appraisal cycle. On appeal, they

broadly state as their theory before the District Court that "procedural defects" precluded the D.O.R.'s attempted actions. They have argued application of the above cited administrative rule, and assert that it is not a new legal theory but additional support for their "procedural defects" theory. This argument is not persuasive because "procedural defects" is much too broad to be considered appellants' legal theory for this purpose. Appellants pointed out the procedural defects in their petition and argued them before the District Court. We have previously held that the proposed application of a statute raised for the first time on appeal will not be considered. Hares v. Nelson (1981), 195 Mont. 463, 637 P.2d 19. As with the statute in Hares, the proposed application of the rule raises an entirely new set of questions not argued before or presented to the District Court. There can be no error on an issue not presented to or ruled on by the lower court, thus we will not review the question on appeal. A party complaining of error must stand or fall on the grounds relied upon in the trial court. State ex rel., Department of Health and Environmental Sciences v. Lasorte (1979), 182 Mont. 267, 596 P.2d 477.

By raising the third issue and phrasing it in such a broad way, appellants attack the District Court's holding that the facts and law pertaining to the case warranted neither a declaratory judgment in their favor, nor issuance of a writ of mandamus. The facts found by the trial court are not contested on appeal, and so we test only the conclusion of the District Court that appellants are not entitled to a declaratory judgment or writ of mandamus as a

matter of law. We first address the District Court's refusal to issue a declaratory judgment in appellants' favor.

As noted in the discussion of the previous two issues, appellants claimed in the District Court that D.O.R.'s actions were procedurally incorrect. Specifically, they contend that the valuation of taxable property cannot be altered during the course of an appraisal cycle. Our inquiry is thus limited to deciding whether the valuation of taxable property in this state may be changed in the midst of an appraisal cycle in the manner it was done here.

There is no question that the 1978 appraisals of "Class 4" property did not always result in equivalent values being placed on similar properties. The use of two different appraisal manuals, and divergent sets of valuation statistics belie this difference. This Court noted in Department of Revenue v. State Tax Appeal Board and Countryside Village (Mont.1980), 613 P.2d 691, 37 St.Rep. 1063, that, "If different valuation statistics are applied to different pieces of property in the same legal classification, an illegal disparity in valuation is likely to result." 613 P.2d at 693, 37 St.Rep. at 1065. The factual background of Countryside Village, was the same as that which gave rise to the present controversy, the disparity caused by use of the two manuals being the focus of that case as well. Though we did not hold that there was an illegal disparity in Countryside Village, D.O.R. has since concluded that there in fact was an illegal disparity and by their actions attempted to remedy the problem.

D.O.R. properly assumed the responsibility of

alleviating the problem. The State is constitutionally authorized and directed to "[A]ppraise, assess and equalize the valuation of all property which is to be taxed in the manner provided by law." 1972 Constitution of the State of Montana, Article VIII, Section 3 (emphasis supplied). The State has in turn empowered D.O.R. to, "[A]djust and equalize the valuation of taxable property among the several counties and different classes of taxable property in any county and in the several counties and between individual taxpayers . . . " Section 15-9-101(1), MCA (emphasis supplied). D.O.R. was clearly acting under its constitutional mandate and authority to equalize values of taxable property.

As noted above, appellants attacked D.O.R's actions in the District Court by contending that they had actually reappraised the property, which could not be done within the appraisal cycle. The District Court did not find this argument persuasive and neither do we, for two reasons. First, appraisal or valuation is the act of ascertaining the market value of taxable property (see Title 15, Chapter 7, Montana Code Annotated), and deals with the individual aspects of specific property. Equalization, on the other hand, refers to adjustments made between class, county and individual property values (see Section 15-9-101(1) MCA) and is a much broader and more amorphous power. D.O.R. clearly was relying on their authority to equalize here.

Second, the power to equalize includes the power to adjust appraised values. We have held that the constitutional and statutory directive to equalize required the State Board of Equalization to, "[D]o all things

-8-

necessary to secure a fair, just and equitable valuation of all taxable property among the counties, and between the different individual taxpayers." (emphasis supplied) State ex rel. Board of Equalization v. Price (1971), 157 Mont. 134 at 140, 483 P.2d 284 at 288. See also Section 15-9-101(1), MCA. After the 1972 Montana Constitution was enacted the State Board of Equalization was split, and eventually replaced by the State Tax Appeal Board and D.O.R. D.O.R. received the administrative powers of the old Board of Equalization, including the broad power to equalize the values of taxable property in the state affirmed in Price. Department of Revenue v. Burlington Northern, Inc. (1976), 169 Mont. 202, 545 P.2d 1083. The overall effect of D.O.R.'s action may have been to set new appraised values, but this was within their power to equalize.

This Court has held that when D.O.R., or its predecessor, becomes aware of unequal values of taxable property, it has a duty to equalize. State ex rel. Schoonover v. Stewart (1931), 89 Mont. 257, 297 P. 476. D.O.R. is required to, "[D]o all things necessary to secure a fair, just and equitable valuation of all taxable property." Montana National Bank of Roundup v. Department of Revenue (1975), 167 Mont. 429 at 431, 539 P.2d 722 at 724. There can be no doubt that the power to equalize includes the power to alter appraised values set at the beginning of an appraisal cycle. Appraisal is an administrative function utilized to facilitate the collection of revenue in the state. However, the power and duty to equalize is constitutionally mandated to ensure that this collection of revenue is done in a just and equitable

manner. We therefore hold that D.O.R. has the authority, when acting under its power to equalize, to change the taxable value of property in this state within an appraisal cycle to comply with its constitutional mandate to tax on a uniform basis. The District Court properly refused to issue the declaratory judgment requested.

Appellants rested their request for a writ of mandamus on the argument that D.O.R. had a clear legal duty to rescind the new valuations placed on their property. This was apparently done in anticipation of a declaratory judgment that the procedures followed in setting these new values were improper and illegal. Since we hold that the District Court was correct in denying appellants' petition for declaratory judgment, the clear legal duty upon which their case hinged is nonexistent. The District Court properly refused to issue the writ of mandamus.

Finally, we point out two rulings which are absent from this decision. First, we make no ruling on the correctness of the values placed by D.O.R. on appellants' property. Nor do we hold that D.O.R. has unbridled discretion to set property values when exercising its power to equalize. We only hold that it is within the parameters of D.O.R.'s equalization power to adjust the taxable value of property within an appraisal cycle.

Appellants' approach to this lawsuit has been to attack D.O.R.'s authority to take the contested action. The propriety of the new values has only been tangentially mentioned, and no probative evidence from either side was forthcoming in the trial court or on appeal. We note that appellants filed an appeal with the Cascade County tax

appeal board simultaneous to filing the case at bar, and initial determination of that issue will properly be made in that forum. "Tax appeal boards are particularly suited for settling disputes over the appropriate valuation of a given piece of property or a particular improvement, and the judiciary cannot properly interfere with that function." Northwest Land and Development of Montana, Inc. v. State Tax Appeal Board (Mont. 1983), 661 P.2d 44 at 47, 40 St.Rep. 470 at 473, citing Larson v. Department of Revenue (1975), 166 Mont. 449 at 457, 534 P.2d 854 at 858, and Blair v. Potter (1957), 132 Mont. 176, 315 P.2d 177.

Second, we do not rule on the question of whether D.O.R. can effectively overrule a county or State Tax Appeal Board decision by exercising its power to equalize. As noted above, appellants improperly raised this issue on appeal as it was not raised at the District Court level.

The District Court denial of appellants' petition for declaratory judgment and issuance of a writ of mandamus is affirmed.

Justice

We concur:

Chief Justice

Justices

-11-

_/s/ Diane G. Barz_

Hon. Diane G. Barz, District Judge,
sitting in place of Mr. Justice
Frank B. Morrison Jr.

_____

_____
Justices

Mr. Justice Fred J. Weber dissents as follows:

In general I agree with the majority opinion in its well written legal analysis of the basic issue of the equalization power of the DOR. I dissent from its specific application in this case.

I do not conclude that it is necessary as a matter of law to be trapped into the position of approving the technique used by the DOR to overrule the decision of the County Tax Appeal Board (not appealed by the DOR) with a resulting 22% increase in property tax value for the plaintiffs.

I concede that the primary argument on the part of the plaintiffs at the district court level was directed to the lack of power to reappraise assessments statewide. I further agree with the majority conclusion that the DOR does have a power of statewide equalization.

The majority states that it does not rule on the question of whether the DOR can effectively overrule a county tax appeal board decision by exercising its power to equalize, pointing out that the plaintiffs improperly raised the issue on appeal for the first time. I disagree with that conclusion.

The petition for declaratory judgment on the part of the plaintiffs in substance alleged:

(1) Plaintiffs protested appraisal of their property in 1979 or 1980, and obtained a 34% reduction in appraised value for those years.

(2) In 1981 plaintiffs' appraised values were the same as 1980.

13

(3)  DOR requested the Cascade County assessor to return the appraised value for taxpayers improvements to the value set by the DOR in 1978 and the appraisal office did so.

(4)  DOR then directed the county assessor to reduce the 1978 value by 12% on all improvements appraised from the 1976 Marshall Valuation Service for the tax years 1982, 1983, 1984 and 1985.

In the prayer the plaintiffs asked for a declaratory judgment finding that the procedure adopted by the DOR in attempting to adjust the appraised value of improvements by returning the value to a 1978 level and reducing by only 12% is illegal and improper.

The District Court reached the following conclusion:

"That DOR, in utilizing a uniform equalization process which reduces the value of all commercial improvements by 12% for tax year 1982 and thereafter, proceeded to do so in a wholly lawful manner, both procedurally and substantively." (emphasis added)

The record does not support the conclusion as to these taxpayers and can properly be classed as "clearly erroneous" as to them.

A determination of value at the county tax appeal board level is binding upon the DOR.  A.R.M. § 2.51.307(3) states:

"(3)  The decision of the county tax appeal board shall be final and binding on all interested parties for the tax year in question unless reversed or modified by the state tax appeal board review.  If not reviewed by the state tax appeal board, the decision of the county tax appeal board shall also be final and binding on all interested parties for all subsequent tax years . . .." (emphasis added)

I concede that the majority opinion is correct in holding that the DOR has the general power to equalize tax assessments.  However, I would hold that the application of such equalization to the present plaintiff taxpayers is both improper and unlawful.  As to these taxpayers, the effect of

14

the equalization is to repeal or overrule the determination by the county tax appeal board. That cannot be done under the regulations to which the DOR is subject.

I would hold that the pleadings and proof are sufficient to establish an appraisal of the plaintiff taxpayers' property under the Marshall Valuation Service in 1978 and 1979, reduction of such appraisals by 34% by the county tax appeal board. Subsequent equalization by the DOR had the effect as to plaintiff taxpayers of improperly reducing the 34% figure to 12%, thereby increasing the values by 22%.

I would therefore conclude that a declaratory judgment should be entered by the District Court, holding the equalization procedure followed by the DOR was improper as to plaintiff taxpayers who were entitled to rely upon their tax appeal board determination.

_____
Justice

I concur.

_____
Chief Justice

15