No. 95-172

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CANDY SADDLER CARTER,

      Appellant & Plaintiff,

  v.

MONTANA DEPARTMENT OF TRANSPORTATION,
and STATE OF MONTANA,

      Respondent & Defendant.

FILED

NOV 13 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Michael B. Austin, Hardin, Montana

    For Respondent:

    Joseph P. Mazurek, Attorney General, Sarah Bond,
Assistant Attorney General, Helena, Montana; Nick A.
Rotering, Montana Department of Transportation,
Helena, Montana

Submitted on Briefs:  July 28, 1995

Decided:  November 13, 1995

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Plaintiff and appellant, Candy Carter appeals a decision and order from the First Judicial District Court, Lewis and Clark County, granting the defendant, the Montana Department of Transportation, summary judgment based on the appellant's lack of standing.

We affirm.

The sole issue on appeal is whether the District Court properly granted the Montana Department of Transportation summary judgment.

## FACTS

The appellant, Ms. Carter, is an enrolled member of the Chippewa-Cree Tribe of the Rocky Boy reservation. She and her partner own and operate the "Pastime," a retail gas and convenience store located outside of Box Elder. Carter possesses a business license issued by the Chippewa-Cree. She is not licensed by the State of Montana as a gasoline distributor, nor is she an Indian Trader licensed by the Bureau of Indian Affairs. Carter receives her gas from the Montana Refining Company (MRC). MRC is a resident motor fuel distributor out of Great Falls.

The record is unclear as to when Ms. Carter first contested the motor fuel tax, but the State does have a letter of protest from July 1991. At that time, Carter applied for a tax refund for all gasoline sold at her gas station in the years 1988 through 1990. The request was denied by the Montana Department of

Transportation (MDT), so Carter then filed an appeal with the State Tax Appeal Board. She did not complete this appeal procedure.

On October 6, 1992, appellant filed an action against the MDT seeking declaratory and injunctive relief to have the court declare the State was without jurisdiction to require either the distributor or her to pay the motor fuel tax. Appellant also requested a refund of the taxes paid between 1988 and 1992.

In her complaint, Carter alleged the State's motor fuel tax was unconstitutional as applied to sales to Indian retailers (Tribal members) inside the boundaries of the Rocky Boy reservation because such sales are preempted by federal law. The District Court granted defendant's motion for summary judgment.

## DISCUSSION

Our standard of review on a grant of summary judgment is identical to that of a trial court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Courts use summary judgment to encourage judicial economy through the elimination of unnecessary trial, delay and expense. Engebretson v. Putnam (1977), 174 Mont. 409, 571 P.2d 368.

The District Court granted summary judgment in favor of the defendant for lack of the requisite standing to bring such a challenge. Initially, we acknowledge that a taxpayer who is directly and adversely affected by an assessment or levy of taxes

has the necessary standing to challenge such a tax. State ex rel. Conrad v. Managhan (1971), 157 Mont. 335, 338, 485 P.2d 948, 950.

Outside these special circumstances, the standing requirement for a party challenging the validity of statutes is firmly established. We have held that standing is the "threshold of every case, especially those where a statutory or constitutional violation is claimed to have occurred. . . ." Olson v. Department of Revenue, 223 Mont. 464, 469, 726 P.2d 1162, 1166. The injury alleged must be personal to the plaintiff, as distinguished from an injury suffered by the community in general. Warth v. Seldin (1975), 422 U.S. 490, 502, 95 S.Ct.2197, 45 L.Ed. 343.

In this case, Carter contends she was personally affected by the tax because the tax affects her distributor, who then imposes the tax on her, which she in turn imposes on her customers. The District Court concluded Carter was not personally aggrieved by the gasoline tax. The court found whether Carter was personally harmed by the gasoline tax statutes depended on where the "legal incidence" of the tax fell. The concept of legal incidence differs from the question of where the economic burden falls. United States v. Delaware (3rd Cir. 1992), 958 F.2d 555, 561.

Shortly before this case was submitted on briefs, the United States Supreme Court decided a case discussing "legal incidence." The Court considered the taxing authority of the State of Oklahoma over the Chickasaw Nation, specifically whether the state could impose a motor fuel excise tax upon fuel sold by Chickasaw Nation retail stores on Tribal trust land. Oklahoma Tax Commission v.

4

Chickasaw Nation (1995), _____ U.S. _____, 115 S.Ct. 2214, 132 L.Ed.2d 400. In that case the Court held, "[t]he initial and frequently dispositive question in Indian tax cases . . . is who bears the legal incidence of a tax." Chickasaw, 115 S.Ct at 2220.

As part of its analysis the Court looked at the language of the Oklahoma statute. The relevant statute in that case did not expressly identify who was to bear the legal incidence of the tax, whether it was the distributor, the retailer, or consumers; nor did the statute contain a "pass through" provision. A "pass through" provision would require distributors and retailers to pass on the cost of the tax to the consumer. Chickasaw, 115 S.Ct at 2221. The Oklahoma statutes were found to have ensured that the distributer was not burdened with the tax; distributors acted merely as "transmittal agents" for taxes imposed on the retailer. Chickasaw, 115 S.Ct. at 2222. The incidence of the tax rested with the retailer. Accordingly, since the retailer was Tribal, the tax infringed upon the right of Tribal self government. See, e.g. Bryan v. Itasca County (1976), 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710.

Montana differs from Oklahoma in this respect. In Montana the relevant statute concerning the gasoline tax reads as follows:

> **15-70-204. (Temporary) Gasoline license tax - rate.** (1) Every distributor shall pay to the department of transportation a license tax for the privilege of engaging in and carrying on business in this state in an amount equal to:
> . . .
>
> (b) for each gallon of all other gasoline distributed by the distributor within the state. . .

5

(i)   24 cents per gallon beginning July 1, 1993; and

(ii)  27 cents per gallon beginning July 1, 1994.

The statute clearly states the tax is to be paid by the distributor.  The distributor is defined in the statutes as:

> (6)   "Distributor" means:
> (a)   any person who engages in the business in this state of producing, refining, manufacturing, or compounding gasoline for sale, use, or distribution;
> (b)   any person who imports gasoline for sale, use, or distribution;
> (c)   any person who engages in the wholesale distribution of gasoline in this state and chooses to become licensed to assume the Montana state gasoline tax liability;
> (d)   any exporter as defined in subsection (8);
> (e)   any dealer licensed as of January 1, 1969, except a dealer at an established airport;
> (f)   any person in Montana who blends alcohol with gasoline.

Therefore, anyone who distributes gas and licenses themselves as a distributor is subject to the tax.  In this case the retailer is not burdened with the tax because Carter is not a distributor. Since the dispositive language in Montana's statute clearly places the burden on the distributor, the legal incidence of the tax does not fall on Carter.  Since Carter is unable to show she has been personally affected by this tax, she lacks the necessary standing to pursue this claim.  Therefore summary judgment was appropriate.

We affirm the District Court's granting of summary judgment based on the appellant's lack of standing.

Affirmed.

_William E. Hunt_
Justice

6

We Concur:

_____
              Chief Justice

_____


_____


_____
                 Justices

7

Justice James C. Nelson specially concurs.

I concur with the result of our decision but not in our analysis. In determining whether Carter was personally injured by the gasoline tax, we analyze where the legal incidence of the tax falls. Although the United States Supreme Court noted in Chickasaw that often the dispositive question in Indian tax cases is who bears the legal incidence of the tax, the legal incidence analysis goes to the merits of the taxation issue. Chickasaw did not involve a standing issue, and thus, properly resolved the taxation issue presented there on the basis of a legal incidence analysis. In the instant case, we need not and should not reach the merits, but need only affirm the District Court's grant of summary judgment based on Carter's lack of standing. Therefore, we should limit our analysis to standing and should not implicitly reach the merits of Carter's claims by addressing the legal incidence of the tax.

The sole issue on review is whether the District Court properly granted summary judgment to the Montana Department of Transportation. The District Court granted summary judgment because it found that Carter did not have standing to challenge the validity of Montana's gasoline license tax as applied to Indian retailers inside the boundaries of the Rocky Boy Reservation.

Standing is a justiciability doctrine designed to control access to the judicial system by determining who is entitled to have a case adjudicated. See Olson v. Department of Revenue (1986), 223 Mont. 464, 469-70, 726 P.2d 1162, 1166. Originating in Article VII, section 4 of the Montana Constitution, the standing

8

doctrine limits judicial power to "cases at law and equity." This Court has interpreted "cases at law and equity" to embody the same limitations as the Article III "case or controversy" provision in the United States Constitution. Olson, 726 P.2d at 1166; Stewart v. Bd. of Cty. Comm'rs of Big Horn Cty. (1977), 175 Mont. 197, 201, 573 P.2d 184, 186.

The fundamental aspect of standing is that it focuses on the party seeking to get a complaint before a court and not on the issues the party wishes to have adjudicated. Flast v. Cohen (1968), 392 U.S. 83, 99, 88 S.Ct. 1942, 1952 , 20 L.Ed.2d 947, 961. Courts approach standing in two ways. The first approach focuses on the constitutional provisions of standing and the second approach focuses on the prudential restrictions that courts use to preserve judicial credibility and to deny standing. Olson, 726 P.2d at 1166; Valley Forge Christian College v. Americans United for Separation of Church and State (1982), 454 U.S. 464, 475, 102 S.Ct. 752, 760, 70 L.Ed.2d 700, 711.

At a minimum, the constitutional provisions require that a plaintiff be personally injured or be threatened with immediate injury by the alleged constitutional or statutory violation. Olson, 726 P.2d at 1166-67; Chovanak v. Matthews (1948), 120 Mont. 520, 526-27, 188 P.2d 582, 585. Thus, at the threshold of every case, especially those where a statutory or constitutional violation is alleged to have occurred, is the requirement that the plaintiff allege "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens

9

the presentation of issues." Northern Border Pipeline Co. v. State (1989), 237 Mont. 117, 129, 772 P.2d 829, 836; Olson, 726 P.2d at 1166 (quoting Baker v. Carr (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678). This personal stake requirement is dispositive. If a party seeking review is not among the injured, that party is not entitled to judicial review. Olson, 726 P.2d at 1166-67 (citing Sierra Club v. Morton (1972), 405 U.S. 727, 734-35, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636, 643); but see Grossman v. State, Dept. of Natural Resources (1984), 209 Mont. 427, 438-39, 682 P.2d 1319, 1325 (holding that in special circumstances, presenting issues of an urgent nature, this Court will accept original jurisdiction and drape the taxpayer with standing).

For example, in Olson, the appellants challenged the constitutional validity of certain statutes that require county residence to obtain benefits such as obtaining a fishing or hunting license or running for county office. The appellants were citizens of Montana but did not live within any county boundaries. Olson, 726 P.2d at 1166. We held that the appellants did not allege that the statutes injured them personally or threatened them with immediate injury. Therefore, they did not meet the threshold requirement of a personal stake in the outcome of the controversy.

Similarly, Carter challenges the constitutional validity of a statute imposing a gasoline license tax. See § 15-70-204, MCA. That statute requires every distributor to pay a license tax for the privilege of engaging in and carrying on business within Montana. Importantly, the tax does not apply to a retailer. As a

10

retailer, Carter was not among the injured and thus cannot allege a personal injury. Because she has not alleged the requisite personal stake in the outcome of the controversy, she is not a proper party before the court.

Where the legal incidence of the tax falls is immaterial for purposes of resolving the standing issue in this case, and our decision to affirm should not be grounded in analysis that is more appropriately directed to the merits of the taxation issues raised by Carter's complaint. Accordingly, I specially concur only in the result of our opinion.

_____
Justice

Justice Terry N. Trieweiler concurs in the foregoing special concurrence.

_____
Justice

11