## 16845. FLEMING *v.* PHINIZY.

PER CURIAM. 1. Ordinarily, when one renders services of value to another, which the latter accepts, a promise is implied to pay the reasonable value thereof.

2. Where an attorney, by the authority of his client, a married woman, brings a suit in her behalf against her husband for divorce, and pending this suit negotiates a settlement with the defendant and the defendant's attorneys, as a result of which the defendant settles upon the plaintiff a substantial sum as alimony, which the plaintiff accepts, the attorney, in the absence of any agreement as to fees, is entitled to be paid by his client such a sum as will represent the reasonable value of the services rendered. *McDonald* v. *Napier,* 14 *Ga.* 89, 104; *Wells* v. *Haynes,* 101 *Ga.* 841 (28 S. E. 968).

3. Where an attorney renders in behalf of his client services of the nature indicated above, without any agreement whatever as to the amount or terms of his compensation, he is not acting under a contract for a contingent fee in a divorce case or in an alimony case, and no question arises as to whether employment upon such a contingent basis would be illegal or contrary to public policy, or whether an attorney who has rendered services under a contract illegal or contrary to public policy could nevertheless recover on quantum meruit.

(a) There is no law or public policy in this State which renders it illegal or improper for an attorney to represent a married woman in a suit for divorce and in negotiations to obtain money as alimony or in lieu of alimony, where the employment is without any agreement as to terms or amount of compensation, or as to what person shall be liable therefor.

(b) In such a case the attorney is not without remedy against the person in whose behalf his services are rendered, merely because the suit is one for divorce and the ancillary matter in controversy concerns the payment of money as alimony, nor because the defendant in the suit might have been required by the court to pay to the plaintiff a sum for the fees of her attorney. The attorney is not obliged to depend for his fees upon a judgment against the opposite party therefor, but can look to his client to pay him the value of his services.

(c) Under the facts alleged in this case, which is a suit by an attorney

against his former client for the reasonable value of services rendered by him of the nature and character above specified, it does not appear that the services were gratuitous and voluntary, for which his client should not pay.

4. Where services undertaken as stated above progressed at length, and then some question arose between the attorney and his client as to what charge the attorney would make for his services, the statement by the attorney in a letter to his client that in his opinion· $250 would be reasonable for the services in procuring the divorce, and "that a rate not less than five per cent. nor more than ten per cent." of the amount obtained as alimony "would be reasonable and customary," could not operate to convert the original agreement into a contract to recover alimony on the basis of a contingent fee.

5. Statements by the client, in a letter replying to such letter from her attorney, to the effect that to reduce the amount expected as alimony "by the percentage" named by the attorney would leave "such a pitiful sum as to make it absurd," and that she could pay the $250 named by the attorney as sufficient for his services in obtaining the divorce "if that is to cover all expenses attending the case," and that she "could have no peace of mind if [she] was in debt for other expenses than this amount," did not as a matter of law constitute a repudiation of liability for the reasonable value of services rendered, nor of the relation between herself and her attorney as previously existing. The attorney could thereafter continue to perform services for his client in pursuance of the matters theretofore undertaken and recover the reasonable value thereof. Such communications between the attorney and his client with respect to the amount of compensation showed a mere discussion without affecting the rights of either, past, present, or future.

6. But even assuming that the letter of the client to the attorney amounted to a positive refusal to be liable for services upon any other terms except those stated by her, so that the attorney could not expect to be paid upon any other basis for future services, the client could not by such arbitrary action terminate such liability as may already have accrued against her, but the attorney could recover upon quantum meruit for such services as he had rendered to that time. The rendition of further services, even though they may be assumed thereafter to have been gratuitous, would not constitute a waiver on the part of the attorney of any right to recover for services theretofore rendered. His subsequent conduct did not cause his client to alter her position nor afford any other ground of estoppel.

7. Applying the foregoing rulings, the petition set forth a cause of action for a recovery on quantum meruit for the value of the services rendered. The court erred in sustaining the general demurrer thereto.
*Judgment reversed. Jenkins, P. J., and Stephens and Bell, JJ., concur.*
DECIDED OCTOBER 2, 1926.

Complaint; from Richmond superior court—Judge Franklin. September 15, 1925.

STATEMENT OF FACTS BY THE COURT.

William H. Fleming sued Mrs. Mary V. Phinizy for an attorney's fee. After the petition had been several times amended the

court sustained the general demurrer and overruled the special demurrers. The case is here on exceptions to the order sustaining the general demurrers. The petition as amended was substantially as follows: (1) The defendant is a resident of Richmond county. (2) The plaintiff, as attorney at law had represented defendant in a suit brought by her husband, Jacob Phinizy, for divorce, filed November 20, 1920. On September 19, 1922, the Supreme Court reversed a judgment of the trial court, and laid down in the decision such principles of law applicable to the facts as in the opinion of the plaintiff practically ended all prospect of the obtaining of a divorce by Mr. Phinizy on any of the grounds named; but Mr. Phinizy and his attorneys seemed to hold a different view, and continued to press for another trial of the case in the lower court, and matters so continued until March, 1923, up to which time the plaintiff, as admitted by him, was paid for legal services rendered, partly through order of the court requiring Mr. Phinizy to make payment for such services, and partly through a voluntary contribution from his own client, Mrs. Phinizy, though the entire sum so received was no adequate compensation for the services actually rendered. (3) On or about the——day of March, 1923, it was apparent that there was no hope for reconciliation between the parties, and that each party was weary of the legal contentions, and knowing that Mrs. Phinizy had just cause to obtain a divorce from her husband on the ground of desertion, though he had no ground upon which to procure a divorce from her, this plaintiff, when approached by Judge Henry C. Hammond, one of Mr. Phinizy's attorneys, to ascertain if there was any way by which Mr. Phinizy could be allowed to get his divorce, replied that there was absolutely no way by which such a result could be reached in the form in which the suit was then pending, because it implied that the defendant, Mrs. Phinizy, had done some legal wrong, whereas she had not, and under no such circumstances would this plaintiff as Mrs. Phinizy's attorney consent for Mr. Phinizy to get a divorce. Upon being asked by Mr. Phinizy's attorney if there was any suggestion this plaintiff could make in the matter, he replied that in his opinion Mr. Phinizy could never get a divorce in the suit pending, but that if that suit was dismissed, and if Mrs. Phinizy should be willing to file a suit against Mr. Phinizy on the ground of desertion, a jury might remove Mr. Phinizy's

disabilities. (4) That suggestion was submitted to Mr. Phinizy, and his attorney reported to this plaintiff that they would be glad to make arrangements along that line, and stated that Mr. Phinizy would be willing to compensate this plaintiff as attorney for Mrs. Phinizy for his work in securing a divorce. This latter suggestion was promptly declined by this plaintiff on the ground that there was one particular question to be settled by further negotiations, and that was the amount of money to be paid by Mr. Phinizy to Mrs. Phinizy as alimony, or settlement of all claims against his estate; and the plaintiff stated he would not accept employment from Mr. Phinizy, because the interests were conflicting; and he was subsequently informed that the amount Mr. Phinizy was willing to pay was not less than $2500. (This last clause in reference to said $2500 was stricken by amendment.) (5) The above developments were promptly reported by this plaintiff to Mrs. Phinizy, and especially his refusal to accept employment from Mr. Phinizy on account of conflicting interests. Thereupon some discussion was had as to amount of settlement, Mrs. Phinizy stating that she might be willing to give matters that direction, but she intended to hold whatever sum was paid her for the benefit of her daughter by a former marriage, whose name had been changed to Phinizy at Mr. Phinizy's request. (6) Mr. Phinizy's attorney, Judge Henry C. Hammond, stated that he would positively not pay more than $10,000. This plaintiff replied that such sum would not be accepted. Negotiations were then continued between Mr. Phinizy's said attorney and this plaintiff as attorney for Mrs. Phinizy; but negotiations were also being conducted to an extent with one or more friends or connections of the parties, to wit, Mrs. A. J. Salinas, Mrs. Robert S. Innes, and Mr. W. B. White, and finally Mr. Phinizy, especially through the stand taken by this plaintiff, was forced up to $30,000. In response to special demurrer the plaintiff amended this paragraph as follows: "When plaintiff and said attorney of Mr. Jacob Phinizy were discussing the amount to be paid, and when plaintiff stated he would not consider the suggestion that Mr. Phinizy should pay $10,000, Mr. Phinizy's attorney asked plaintiff what his idea was as to a proper amount, and plaintiff replied that his own idea was that Mr. Phinizy, with his reputed wealth, ought to pay nearer $75,000 than $10,000, but that the amount was of course a subject of

negotiation, and especially would it have to be agreed to by Mrs. Phinizy. Plaintiff communicated those remarks to Mrs. Phinizy, but she was later persuaded to close up the disagreeable business by agreeing to accept $30,000, and plaintiff did not consider that he ought to insist on a larger sum, since the defendant was willing to take the $30,000, in order to get rid of the embarrassment and nervous strain which she was under. Said $30,000 was paid to Mrs. Mary Vason Phinizy individually, in exact accordance with the advice of plaintiff, which Mrs. Phinizy accepted." (7) While the above-stated negotiations were in progress the question of what charge this plaintiff should make for his services was brought up at a conference at which he, Mrs. Phinizy, and Mrs. A. J. Salinas, sister of the defendant, were present, and he stated that he would charge only some reasonable or nominal sum for the actual formal work in the court-house of securing a divorce for Mrs. Phinizy; but that if a settlement was reached, he should have some additional compensation by way of percentage on the amount obtained; whereupon Mrs. Salinas said, "Well, I think that would be fair;" and Mrs. Phinizy acquiesced, at least by her silence; and with that understanding he proceeded to render services in obtaining a settlement, examining the papers proposed, drawing a new paper, and making additional suggestions for the complete protection of Mrs. Phinizy, which were incorporated in the final settlement, Mrs. Phinizy having refused to sign any paper presented by Mr. Phinizy until after its terms had been submitted to this plaintiff as her attorney. (8) One or two days after that conversation Mrs. Phinizy made inquiry of the plaintiff what his fee would be, and he replied in a letter, under date of March 25, 1923, stating that for $250 he would do the formal court-house work in obtaining a divorce, but that for the other work he would expect compensation not less than 5 per cent. nor more than 10 per cent. on the amount of the settlement, which he felt satisfied was due to his own efforts. A copy of the letter is attached to the petition, as follows:

"Augusta, Ga., March 25, 1923.

"Mrs. Mary V. Phinizy, Bon Air-Vanderbilt Hotel, Augusta, Ga.

"Dear Mrs. Phinizy:

"I found your note of yesterday awaiting me when I reached home last night, and was much pleased at the way matters are

progressing. I think you had best not sign any papers until I see them. However, that need not cause any delay, as I will be at your service, I think, at any time between 7 and 9 this evening. Also, while I will be at Appling court Monday and Tuesday, I hope to be at my office or at home late in the afternoon or early evening of each of these days, and can be reached by phone.

"In regard to the check being left with an officer of the Citizens & Southern Bank, it may be best to name Mr. Ferguson, the chief officer here, as he could keep the matter to himself; whereas if you select a subordinate officer, he might feel obliged to ask the consent of his superior. I know Mr. Ferguson well, and will explain the situation to him at any time, if you so desire.

"Now that the amount has been agreed upon, I consider it to your interest for the contract to be signed as soon as practicable, in order to guard against possible contingencies.

"In regard to fees, I am sure we are not going to have any difficulty. Indeed, I am willing to leave that matter almost entirely in your hands. But as you have mentioned the subject, it is of course proper for me to give you a prompt and candid statement from my viewpoint. You ask me at this stage to let you know what my charge will be for conducting your suit against Mr. Phinizy, who will make no contest. His seeming desire not to have a lawyer only increases my own responsibility. I hope he will engage one. I think a charge of $250 for that work would be reasonable. This need not be paid until the end of the case, unless you prefer to pay part or all in advance. But of course it seems to me that when the $30,000 check is cashed, some more liberal compensation on a percentage basis ought to be made. I mentioned that expectation in one of our recent interviews at Mrs. Salinas' home, and she replied: 'Well, I think that would be fair,' and I understood you to acquiesce. I did not then name any rate of percentage, but now suggest that a rate not less than 5 per cent. nor more than 10 per cent. would be reasonable and customary under such circumstances.

"In this connection, let me say that the satisfactory outcome we are about to reach could never have been obtained, except on the line I suggested, which originated with me, and with no one else. We were at a deadlock for the future after the Supreme Court gave us the victory it did. Mr. Phinizy refused to abide by that

decision, and was pressing the litigation which was of course very disagreeable. I gave his attorney to understand that I would fight it out to a finish, and that in my judgment he would never get a divorce. One of the attorneys came to see me with the inquiry if some arrangement could not be made for us to allow him to get a divorce judgment in the suit then pending. I replied that such a thing would never be agreed to by me or you. The attorney then asked if there was nothing that could be done. I replied that there was only one possible opening, and that was for Mr. Phinizy to dismiss his suit, thus acknowledging that he had no ground for divorce against you, and thus clinching the legal victory we had won; and if that was done, you might be persuaded to file a suit against Mr. Phinizy on the ground of desertion, and the jury would of course relieve his disabilities, so that he could marry again at his pleasure. That attorney was greatly pleased at this suggestion from me, and reported it to Mr. Phinizy, who seemed to take to it very kindly, but of course he 'kicked,' when terms of compensation were mentioned, naming $10,000 as his utmost limit.

"At a subsequent interview with the same attorney I discussed (as I did with you and your sister) all the legal phases of the situation, your possible claim for dower and year's support, especially as the contract you signed, relinquishing all such rights, was not approved by the judge of the superior court, as the law usually requires in such matters of contracts of sale from wife to husband. I also mentioned the possibility of a contest of his will, on the ground of undue influence of the other lady in the case, and urged that it was manifestly best to settle these questions in the lifetime of both of you, and thus avoid costly and tedious litigation over his estate. I also outlined in detail the best plan of procedure, including the entry on the court record of a dismissal of his case, the immediate filing of your case against him; and the deposit by him of cash or securities in the hands of a third party, etc. All these matters were reported to Mr. Phinizy, and each point has been substantially incorporated in the contract which you are asked by him to sign.

"I have especially protected your interests against loss by his death or yours, requiring the delivery of the check or securities (1) when the decree is signed, or (2) upon his death; or (3)

upon your death, to be delivered to your executor or administrator. The result is, you are to get your complete vindication in court; you are to be rid of a vexatious lawsuit; and you are to get the $30,000 in cash, in addition to having the right to your annuity of $7500 confirmed. Also the $30,000 comes to you absolutely and not hampered, as at first suggested, by a trust for any one else; though you are free to use it for your daughter, as you intended from the first. My work in the suit of Mr. Phinizy against you was entirely defensive. My work in bringing about the successful outcome was aggressive, original, and constructive.

"I apologize for going into so much detail, but I thought you might prefer to have in writing the views already expressed to you in conversation.

"Now, in conclusion, my good friend, let me say, I am your lawyer, and I am going to see you through in this matter, regardless of fees. My professional pride will require that much. So please do not allow yourself to worry on that score. Dismiss it from your mind, until we come to the end and the check is cashed. The amount to be paid me will, within any reasonable limits, be left to your discretion.

"With highest regards and best wishes,

"Wm. H. Fleming."

(9) To this letter Mrs. Phinizy replied that after deducting such a percentage from the $30,000, the reduced amount would be such a pitiful sum as to make it absurd to offer her (that is, her daughter), and in the same letter stated that she would pay the $250 for obtaining the divorce for her "If that is to cover all expenses attending the case" (and there was no other expense attending that case); and she also stated in that letter that she could have no peace of mind if she felt that she was in debt for other expenses than this amount of $250 was covering. In response to a demurrer a copy of the letter referred to in this paragraph was added by amendment, as follows:

"The Bon Air-Vanderbilt. Augusta, Georgia, Sunday night, March 25th.

"Dear Mr. Fleming:

"Your long letter has been very carefully read. Mrs. Innes is ill, and has not been able to further confer about the matter, and I am far from equal to another fruitless talk, and so far have

nothing to tell you. I will be less apt than ever to sign any paper until I realize where it will lead me. I now think it must have been subconsciousness on my part that in the very beginning of the suggestion for a payment insist that if ever the money be paid it should be definitely placed in my care, or as a 'trust fund,' I believe it is termed, for my daughter.

"I have never wanted Jacob Phinizy's money, other than for that purpose, and to lessen the sum of thirty thousand dollars by the percentage you write of expecting would be to reduce the amount of such a pitiful sum as to make it absurd to offer her.

"No, thank you, please do not mention the matter to Mr. Ferguson. He was indifferent to my interest in a little matter of business last summer when I was going to Europe, and while I bear him no resentment, it's as well not to try to cross an unsatisfactory bridge the second time.

"I think I should ask Mrs. Innes to request Jacob Phinizy (how awkward it all seems that he should not have a lawyer to talk with) to relieve her of the charge of the check. She is plainly anxious to be relieved of the responsibility, and is not a strong constitution, and perhaps it would be as well not to tax her, and to send the check to a cousin of Mr. Leggett's, an eminent lawyer in New York, and who is also the manager, or custodian I mean, of the securities she and her husband have.

"Thank you for writing me of the fee for obtaining a divorce for me. I can pay the amount of $250, if that is to cover all expenses attending the case. Perhaps Jacob Phinizy's intention not to contest the case keeps him from having a lawyer, but of that I know nothing. I really have no money, except what is anticipated for contracted obligations, and could have no peace of mind if I felt I was in debt for other expenses than this amount, i. e. $250, will cover.

"Mrs. Innes expected to talk with Jacob Phinizy to-morrow, Monday morning. If I can reach her by 'phone or note, I will ask her about this rearrangement, and let you know in every way the results she will have to tell me.

"Very truly yours,

"Mary Vason Phinizy."

(10) But under the implied agreement she was not to be in debt to this plaintiff at all until $30,000 was paid into her hands,

and not until then was the percentage to be paid, as this part of the fee was entirely contingent. This plaintiff at no time received any intimation from Mrs. Phinizy that he could construe into an intention on her part not to pay him a reasonable compensation on the amount obtained in the settlement, outside of the $250 for actual formal work in obtaining the divorce; and this plaintiff, acting under the impression that he would be reasonably paid, but with no positive agreement as to the percentage, went on with his work, carried out his contract in full, obtained a final decree, and the $30,000 was finally paid over to Mrs. Phinizy. (11) When plaintiff sought to have a settlement in the matter of fees, his client, Mrs. Phinizy, declined to make any further payment, except the $250 for the formal work in the court-house, which sum never was intended to include the still more important services rendered in connection with the litigation. (12) Plaintiff claims that the value of legal services rendered to the defendant and unpaid for, as above stated, is not less than 5 per cent. nor more than 10 per cent. on the $30,000 obtained in the settlement. Wherefore the plaintiff prays: 1. That he be given judgment against defendant for the sum of $2500. 2. That process issue, etc.

By amendment a paragraph numbered 13 was added, the substance of which is as follows: (13) At the time stated in paragraph 2 of the petition, when Judge Hammond, as attorney for Mr. Phinizy, called to see this plaintiff, the situation between Mr. and Mrs. Phinizy, both from a personal and a legal standpoint, had reached what might be called a deadlock. Mr. Phinizy had lost his case on the law, but showed by his actions that he was determined not to cease litigation, as his case was still pending in court, subject to another trial. Mrs. Phinizy adhered to the positive statement she had made from the beginning, that she would not allow Mr. Phinizy to get a divorce if she could prevent it, on the suit he had pending against her, in which he charged her falsely, as she claimed, first with desertion, and then with cruel treatment. Mr. Phinizy was in bad health and greatly worried, and Mrs. Phinizy was suffering under the nervous strain to which she had been put. It was in that situation of affairs that this plaintiff originated and communicated to Mr. Phinizy's attorneys

another course, by which both parties could be divorced, and by which his client could.be paid some fixed amount of money in release of all possible interest in her husband's estate, which should follow from a decree of divorce. Mrs. Phinizy accepted those services, and is now under obligation to pay for them, even if no further contract has been made. That plan was accepted by both Mr. and Mrs. Phinizy, and under it she received $30,000, as above set out. The plan was for Mr. Phinizy to dismiss the suit he had filed against his wife, charging her with desertion and cruel treatment, and for Mrs. Phinizy to file suit against him on the perfectly legal ground of desertion on his part, and neither side doubted that a jury, in giving Mrs. Phinizy her divorce, would also relieve the husband's disabilities, so that he could marry again. But the plaintiff shows further that another contract was made to pay him a percentage on the amount recovered from Mr. Phinizy of not less than 5 per cent. nor more than 10 per cent.— the only question left open being the amount between those limits. Those terms were communicated in writing to the defendant, but she never rejected them until after the $30,000 had been paid over to her. If she intended to make a legal rejection of the terms stated, it was incumbent on her to have notified plaintiff positively and definitely, so that he could have withdrawn from further connection with that part of the case; but, on the contrary, she continued to accept and profit by his services.

Substantially the following amendment. was offered and allowed: Under a written contract between Jacob Phinizy and Mrs. Mary Vason Phinizy under date of July 22, 1915, Mr. Phinizy agreed to pay his wife the sum of $7500 as an annuity during her life, in consideration of which she obligated herself in said contract to accept said sum (payable $625 per month), together with other considerations, as a full acquittance and release of her said husband from all claims of alimony against him, and all interest of every kind in his property or estate. If that contract was binding, she had no further legal claim against Mr. Phinizy, or his property or estate. This plaintiff investigated the legal status of that contract, and reached the conclusion that it was not binding on the wife, because it had not been approved nor allowed by an order of the superior court, as required by section 3009 of the Code of Georgia. This opinion was communicated to Mr. Phinizy's

attorney aforesaid, and was given as one ground why Mr. Phinizy should make additional payment before getting a decree of divorce, which would cut off all claim by the wife; so that the $30,000 obtained by the plaintiff as aforesaid for his client was in addition to the $7500 annuity provided for in said agreement of June 22, 1915. The plaintiff further shows that a day or two after he received Mrs. Phinizy's letter of March 25, 1923, and while the negotiations with Mrs. Phinizy were still pending, he had a further conference with the defendant, at which plaintiff made reference to his expected compensation in connection with the payment to be made by Mr. Phinizy, and suggested that the matter of fixing the amount of that compensation be laid aside for the present, stating that he had no doubt that they could get together on that question. Mrs. Phinizy accepted that suggestion and gave no intimation at that time that she intended or expected to refuse to make any compensation whatever in connection with the amount obtained from Mr. Phinizy; nor did she intimate that she intended that the $250 agreed upon should cover any services except those connected with the formal work in the court-house in trying the case and obtaining a final decree, but continued to rely upon the advice and accept the services of the plaintiff in all matters connected with the proposed payment by Mr. Phinizy, and which were not embraced within the services to be covered by the fee of $250.

*William H. Fleming,* pro se. *Cohen & Gray,* for defendant.

JENKINS, P. J., dissenting in part. I agree with all that is said in the decision except the statement in the fifth division to the effect that the communication to which it refers would not prevent the attorney from thereafter continuing to perform services for his client in pursuance of the matters theretofore undertaken, and recovering the reasonable value of such subsequent services. In my opinion, the communication referred to left the attorney in a position to recover only for the value of the services rendered prior to the receipt of the communication, under the theory set forth in the sixth division of the syllabus.