No. 13679

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

GERALDINE T. ENGEBRETSON,

        Plaintiff and Respondent,

-vs-

BRYCE C. PUTNAM and BETTE J. PUTNAM,

        Defendants, Counter-claimants and
        Appellant.

Appeal from: District Court of the Fourth Judicial District,
              Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

    For Appellant:

        Boone, Karlberg and Haddon, Missoula, Montana
        Sam E. Haddon argued, Missoula, Montana

    For Respondent:

        Skelton and Knight, Missoula, Montana
        Robert Skelton argued, Missoula, Montana

Submitted: September 29, 1977

Decided: NOV - 4 1977

Filed: NOV - 1977

_Thomas J. Kearney_ Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants appeal from a summary judgment granted to plaintiff by the District Court, Missoula County, in her suit on a promissory note.

Plaintiff Geraldine T. Engebretson was the owner of certain real property located in Missoula County, Montana. On October 29, 1970, she listed this property for sale with Trail Realty owned by defendants Bryce C. and Bette J. Putnam. Defendants prepared a listing agreement for the property using a standard form listing contract which plaintiff signed.

Defendants later decided to purchase plaintiff's property for themselves. On January 18, 1971, defendant Bryce C. Putnam executed a promissory note in part payment, payable to Geraldine T. Engebretson for $3,000 at 8 percent interest due in one year.

Plaintiff signed a warranty deed whereby she did "grant, bargain, sell and convey" her property to the Putnams. By the same deed Engebretson convenanted that she would:

> "* * * forever WARRANT and DEFEND all right, title
> and interest in and to the said premises and the
> quiet and peaceable possession thereof unto the
> [Putnams] * * * against all acts and deeds of [Enge-
> bretson] and all and every person and persons whom-
> soever lawfully claiming or to claim the same."
> [Bracketed material paraphrased.]

The warranty deed stated Engebretson's grant was subject to a first mortgage in favor of the Missoula First Federal Building & Loan Association, which mortgage the Putnams agreed to assume and pay according to its terms.

At the time Engebretson sold her property to the Putnams, it was subject to the liens of Special Improvement District No. 296 for engineering fees and Special Improvement District No. 304

- 2 -

for sewer. Prior to the execution of the warranty deed, plaintiff had paid all matured special improvement district installments, however $1,244 in unmatured installments remained to be paid. The listing agreement which defendants prepared for plaintiff indicated the property was subject to an annual special improvement district payment of $21.50 for sewer installation. The warranty deed made no provision for the assumption of or proration of the unmatured payments by either party. Defendants later paid the $1,244 to release the special improvement district liens from the property.

As compensation for paying these installments, Putnams claimed a setoff against the amount owing on the $3,000 promissory note Bryce Putnam signed. Consequently, when the note matured on January 18, 1972, Putnams did not make any payment toward the amount due. In May 1972, they offered to pay Engebretson an amount less than the $3,000 plus interest then due. She refused to accept the lesser amount.

On June 2, 1972, Engebretson filed a complaint against Bryce Putnam alleging Putnam executed the promissory note; that he failed to pay the note upon maturity; and that the note provided for a reasonable attorney fee in case of suit to recover it. She prayed for judgment for $3,000, interest and a reasonable attorney fee.

Putnam filed an answer admitting the existence of the note and that he had made no payment on it, but alleging, as a defense, that the amount due on the note was subject to a setoff for the special improvement district installments he had paid. He counterclaimed for a setoff of $1,244 and for a reasonable attorney fee. He also moved to join his wife as a defendant and counterclaimant in the action.

Plaintiff filed a reply to defendants' counterclaim alleging,, among other things, that Bryce Putnam was a real estate broker; that she had listed her real property with him for sale; that at the time plaintiff listed her real property with the defendants and at the time she sold the property to them, they knew of the unmatured special improvement district installments previously assessed on the property.

Each side moved for summary judgment. On the basis of the pleadings, the exhibits thereto, and the memoranda of law submitted by the parties, the District Court granted summary judgment in plaintiff's favor and awarded her $1,450 in attorney fees. Defendants appealed.

Three issues developed on appeal:

1. Did the District Court err in granting summary judgment?

2. Did the District Court err in denying defendants' counterclaim?

3. Did the District Court err in awarding plaintiff attorney fees in the amount of $1,450.

The purpose of the summary judgment procedure is to encourage judicial economy through the elimination of unnecessary trial, delay and expense. Bonawitz v. Bourke, ____Mont.____, 567 P.2d 32, 33, 34 St.Rep. 638, 640 (1977); Guthrie v. Dept. of Social & Rehabilitative Services, ____Mont.____, 563 P.2d 555, 556, 34 St.Rep. 255, 257 (1977). Summary judgment is not a substitute for trial, however, and is inappropriate when genuine issues of material fact remain to be litigated. Rule 56(c), M.R.Civ.P.; Duncan v. Rockwell Manufacturing Co., ____Mont.____, 567 P.2d 936, 938, 34 St.Rep. 821, 823 (1977).

Additionally, whether a court should grant a motion for summary judgment or require a trial rests in the sound discretion

of the court even though the movant may have made out a case for summary judgment. 6 Pt. 2 Moore's Federal Practice ¶56.15[6]; John Blair & Co. v. Walton, 47 F.R.D. 196 (1969). If there is any doubt as to the propriety of a motion for summary judgment, the court should deny it. Fulton v. Clark, 167 Mont. 399, 403, 538 P.2d 1371, 1373 (1975); Kober & Kyriss v. Billings Deaconess Hospital, 148 Mont. 117, 122, 123, 417 P.2d 476, 479 (1966).

During oral argument on appeal, certain facts were brought to light making it apparent that genuine issues of material fact remained to be litigated. Summarizing from the pleadings and oral argument, plaintiff's allegations are: (a) that plaintiff listed her property with the defendant realtors for sale, thus creating a principal/agent relationship between plaintiff and defendants at the time of the listing; (b) that defendants prepared both the listing agreement and, after they decided to purchase the property themselves, the warranty deed; and (c) that at all times defendants knew of the unmatured special improvement district installments, yet no mention was made of them in the warranty deed. The pretrial proceedings left undecided such issues as:

1. Did the principal/agent relationship between plaintiff and defendants still exist at the time plaintiff sold her property to defendants?

2. What was the intent of the parties regarding payment of the unmatured special improvement district installments?

3. Did defendants breach any fiduciary duty they may have owed plaintiff?

This Court has previously held that summary judgment is usually inappropriate where the intent of the contracting parties

- 5 -

is an important consideration. Fulton v. Clark, supra; Kober &
Kyriss v. Billings Deaconess Hospital, supra. Because this
and other questions heretofore mentioned remain at issue, we hold
summary judgment was improperly granted in this case.

Because this case must be remanded, we feel some direction
to the District Court on the remaining two issues is appropriate.

The first issue in essence is whether unmatured installments
of a special improvement district assessment constitute an encumbrance upon the real property upon which they are assessed from
the date the special improvement district assessment was levied,
or from the date the individual installments of the assessment
mature.

By statute, a special improvement district assessment "shall
constitute a lien upon and against the property upon which such
assessment is made and levied" and the assessment attaches as a
lien to the property assessed "from and after the date of the
passage of the resolution levying such assessment * * *." Section
11-2229, R.C.M. 1947. The only way in which the lien created by
the assessment can be extinguished is by payment of the assessment
including all penalties, costs and interest. Section 11-2229,
R.C.M. 1947.

Clark v. Demers, 78 Mont. 287, 254 P. 162 (1927) and State
ex rel. Malott v. Board of Commissioners, 89 Mont. 37, 296 P. 1
(1931), relied on by plaintiff, do not stand for the proposition
that special improvement district assessment installments become
liens upon the property assessed only upon maturity of the install-
ments. Clark and Malott are distinguishable from the instant case
in that they dealt with irrigation district assessments rather
than special improvement district assessments. Both kinds of assess-

- 6 -

ments are statutorily controlled; thus, one must look to the statutes creating them to determine the time the lien of assessment attaches.

The statutory provisions regarding special improvement districts are set out in sections 11-2201 through 11-2288, R.C.M. 1947. To create a special improvement district, the city council must first pass a resolution of intent and give public notice thereof. After the protest time has elapsed, the council must pass a resolution actually creating the special improvement district. Section 11-2207, R.C.M. 1947.

The council then determines the entire cost of the proposed improvements and establishes a method by thich it shall assess the cost of the improvements against the property owners who are subject to the assessment. Section 11-2214, R.C.M. 1947. By a separate resolution, the council levies and assesses a tax upon all taxable property in the special improvement district. This resolution contains a description of each lot and parcel of land with the name of the owner if known, the amount of each payment to be made, and the date when it becomes delinquent. The assessment may be paid in equal annual installments spread over a term not exceeding twenty years. Section 11-2222, R.C.M. 1947.

The statute under which irrigation district assessments in Clark were made, provided that the board of directors of each irrigation district should make a yearly determination of the total amount of money needed for that year for the administrative expenses of the district. The board would then levy a proportionate amount of the yearly cost against each landowner in the district. The tax thus determined would become a lien upon the land and the lien would attach "as of the first Monday of March of that year". Laws of Montana 1921, Ch. 153, §22 (repealed 1929).

The statutory schemes for special improvement districts and for irrigation districts thus differed in two important ways: (1) the entire cost of the special improvement district is made in one determination and assessed accordingly, whereas the irrigation district assessment is determined yearly and the amount of the yearly assessment fluctuates according to the needs of the district; and (2) the specific statutory times at which the assessments attach to the property as liens, i.e., the date of the resolution levying the special improvement district/<sup>assessment</sup> versus "the first Monday of March of [each] year."

Section 67-1617, R.C.M. 1947, provides that the term "encumbrances" includes taxes, assessments, and all liens upon real property. Therefore, a lien created by a special improvement district assessment is an encumbrance upon the property which dates from the passage of the resolution creating the assessment.

The remaining issue involves what evidence is sufficient to support an award of attorney fees. The promissory note upon which plaintiff sued provided for recovery of a reasonable attorney fee in case suit was brought to recover on the note. The only evidence plaintiff presented to establish a reasonable attorney fee was a copy of her retainer agreement with her attorney. This was a contingent fee agreement authorizing her attorney to retain one-third of any monies received as compensation for his services. On the basis of this agreement alone, the court awarded plaintiff $1,450 as a reasonable attorney fee.

We disapprove of an award of attorney fees based on this type of documentation. We have previously approved guidelines for such an award. Crncevich v. Georgetown Recreation Corp., 168 Mont. 113, 541 P.2d 56 (1975). Those guidelines, which

enumerated the items to be considered in making an award, include:

> " * * * the amount and character of the services
> rendered, the labor, time, and trouble involved,
> the character and importance of the litigation in
> which the services were rendered, the amount of
> money or the value of property to be affected, the
> professional skill and experience called for, the
> character and standing in the profession of the
> attorneys. * * * The result secured by the services
> of the attorneys may be considered as an important
> element in determining their value." 168 Mont. 119,120.

The retainer agreement between plaintiff and her attorney does not conform to the above requirements. The result of the negotiations between an attorney and his client as to their fee agreement is not controlling in fixing a reasonable attorney fee to assess against the opposing party. Such an award must be determined in accordance with the guidelines enumerated in Crncevich.

The cause is reversed and remanded with instructions to proceed in accordance with this Opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.