No. 13734

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

MARTIN OLSON,

          Plaintiff and Respondent,

    -vs-

CLARK CARTER,

          Defendant and Appellant.

---

Appeal from:  District Court of the Tenth Judicial District,
             Honorable LeRoy L. McKinnon, Judge presiding.

Counsel of Record:

    For Appellant:

        Bradley B. Parrish argued, Lewistown, Montana

    For Respondent:

        Rapkoch and Knopp, Lewistown, Montana
        Peter L. Rapkoch argued, Lewistown, Montana

---

Submitted: September 30, 1977

Decided: DEC 28 1977

Filed:

_Thomas J. Kearney_
                         Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

Defendant appeals from a judgment of the District Court, Fergus County, awarding plaintiff the unpaid balance on a contract for fattening cattle, plus attorney fees.

During September, 1974, the parties to this suit discussed the possibilities of plaintiff feeding and fattening defendant's cattle. A written contract was signed in November, 1974, setting forth the services and feed to be supplied by plaintiff, the compensation to be paid by defendant, and the basis for computation of the feeding charge. Pursuant to this contract, defendant delivered to plaintiff 204 head of cattle to be fed and fattened in plaintiff's feedlot. Defendant was thereafter billed monthly for feeding costs. Accordingly, defendant paid $27,935.11 as payment for plaintiff's feeding of the cattle before refusing to pay any additional sums.

Plaintiff sued defendant for the unpaid balance on the contract for feeding and fattening the cattle. The complaint alleged that defendant owed $20,037.41. Defendant refused to pay this amount on the ground that the total billing placed the cost per pound of gain at $.98 whereas the anticipated price for fattening assured by plaintiff was to be around $.50 per pound of gain. Defendant contends the difference between the anticipated and actual cost was due to plaintiff's breach of both the written contract and an oral agreement apart from the written contract.

Following a nonjury trial, the District Court found plaintiff performed his part of the contract and was entitled to a judgment as prayed for in plaintiff's complaint. In addition, plaintiff was also entitled to recover attorney fees in the amount of $6,679.14. From this judgment defendant appeals.

- 1 -

Defendant raises the following issues on appeal:

1. Did the District Court err in finding that plaintiff had fully performed his part of the Custom Cattle Feeding contract?

2. Did the District Court err in awarding plaintiff $20,037.41 plus interest as damages?

3. Did the District Court err in awarding attorney fees in the amount of $6,679.14?

The parties to this appeal are not disagreeing as to the law applied, but rather over the facts as found by the District Court. Issues one and two are combined in reviewing whether evidence exists to support the findings of the District Court. In considering the totality of the facts before the District Court, this Court notes two principles of appellate review. First, where there is substantial evidence to support the findings of the District Court, this Court will not review such findings unless there is a clear preponderance of evidence against such findings. Merritt v. Merritt, (1975) 165 Mont. 172, 177, 526 P.2d 1375. Second, the credibility and weight given to the witness, especially where the evidence is conflicting, is a matter for the District Court's determination in a nonjury case. Miller v. Fox, (1977) ____Mont.____, ____P.2d____, 34 St.Rep. 1367, 1370.

Defendant argues that plaintiff failed to perform his part of the written contract and therefore was not entitled to the damages awarded.

Included within this failure to perform was plaintiff's breach of the collateral oral agreement apart from the written agreement. Pursuant to this collateral oral agreement plaintiff allegedly agreed to abort the heifers included in the cattle delivered for feeding. The heifers were not aborted thereby causing

- 2 -

a high death loss and poor fattening result. At trial, when defendant offered testimony concerning this oral agreement, plaintiff offered evidence to contradict the existence of such agreement and maintained a continuing objection as to any evidence not supported by the written contract being inadmissible under the parol evidence rule. Such objections were overruled. From the conflicting versions presented by plaintiff and defendant the District Court chose to rule that plaintiff had performed his part of the written agreement. While no mention of the oral agreement was made by the District Court, the findings of fact are inconsistent with and contradictory to the existence of such an oral contract. The inference of such a ruling is that no collateral oral agreement existed, or, if there was, then the plaintiff performed his part of that agreement. This Court must sustain the District Court's ruling on this point:

> "From these conflicting versions presented by plaintiff and defendant as to the terms of their contract, the trial judge chose to believe defendant * * *. This Court must sustain the trial judge's ruling on this point.

> "' * * * The credibility and weight given to witnesses, however, is not for this Court to determine. This is a primary function of a trial judge sitting without a jury; it is of special consequence where the evidence is conflicting.'" Miller, supra at 1370.

Although this Court will not review the credibility and weight given to witnesses by the District Court in establishing performance of the cattle feeding contract, this Court will review the sufficiency of the evidence to support the damages awarded. From the record, a written contract was entered into by the parties. Section 13-705, R.C.M. 1947, sets forth the rule of interpretation of contracts:

> "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter."

In Batey Land & Livestock Co. v. Nixon, (1977) _____

Mont.____, 560 P.2d 1334, 34 St.Rep. 105, 110, this Court

cited Fulton v. Clark, 167 Mont. 399, 538 P.2d 1371 in stating:

> " * * * The plain and clear meaning of the
> instruments is to control and the intent of the
> parties is to be ascertained from the instru-
> ments."

Pursuant to the contract, defendant was to pay for "Purchased

barley and hay at cost plus interest at 1% p/mo", "Raised

haylage at market value", "Minerals and vitamins--supplements

(hand mixed) at cost". Plaintiff testified that the average

cost of all the barley fed to defendant's cattle was $6.41 per

hundred weight. Plaintiff also testified that the charge to

defendant for the barley was $6.75 per hundred weight. Plain-

tiff included in the total charge for barley an additional

$0.13 per hundred weight for storage and $0.15 per hundred weight

to pay for the cost of a capital improvement. Defendant contends

that although the charge for storage may be correct, the $0.15

charged on the barley to construct capital items should not be

charged to him pursuant to the contract. We agree. The "plain

and clear meaning of the instrument" controls the intent of the

parties. Nowhere in the written agreement is there a provision

to charge defendant for capital items.

Additionally, paragraph I of the contract states the

following:

> "Feeder hereby agrees to take delivery of said
> cattle for the purpose above stated and to
> handle and care for them in keeping with his
> experience and knowledge of the cattle feeding
> and artificial insemination businesses and acts,
> upon which the Owner relies, and pursuant to
> the standard of practice of said businesses in
> the Central Montana area."

The average cost of all the barley charged to defendant

was $6.41 per hundred weight. Plaintiff's testimony as to his

cost is as follows:

"A. No. We purchased this barley, some of this barley arrived prior to December 30th, December 2nd, 31st and 20th, and most of it in January.

"Q. But it was all purchased at the same price? A. No.

"Q. Did it follow the market price? A. Well, I hope it did. We purchased some at $7.00, some at $5.70, some at $6.08, some at $6.25, some at $6.55 and 6.55, 6.50 and 6.35.

"Q. That's in a chronological order, 6.35 was the last? A. $6.35 was the last - no. No. The last bunch of barley I bought was $6.25.

"Q. Isn't it a fact that the price of barley from November, '74 to March, '75, went down? A. No, it was not.

"Q. It didn't go down? A. No. After January 1st, it went up. T-Bone paid $7.25 for barley, if you please."

Contrary testimony as to the price of barley was given by the manager of the Con-Agra grain elevator in Lewistown, Montana. The manager stated that the highest cost for barley between October, 1974, and March, 1975 was during November, 1974, when Barley reached $6.50 per hundred weight. From that month forward, the price went down reaching a low in March, 1975 of $5.20 per hundred weight. No evidence exists to explain the difference between the price paid by plaintiff and the price of barley sold at the local grain elevator in Lewistown.

The third issue raised on appeal concerns the award of attorney fees. Defendant contends the District Court abused its discretion in awarding attorney fees in the amount of $6,679.14. We agree.

The contract under which plaintiff sued provided for recovery of reasonable attorney fees in the event the defendant failed to make payments as provided by the contract. The only evidence presented to establish reasonable attorney fees was the testimony of plaintiff's attorney. That testimony revealed 15 hours had been spent working on the case. For this 15 hours over

- 5 -

$6,000 was charged based on a contingent fee arrangement between the plaintiff and his attorney. On the basis of this evidence, the court awarded plaintiff $6,679.14 as reasonable attorney fees.

In Engebretson v. Putnam, ____Mont.____, ____P.2d____, 1246, 34 St.Rep. 1241,/(#13679, filed 11/4/77) this Court faced the same question under almost identical facts. This Court stated:

> "We disapprove of an award of attorney fees based on this type of documentation. We have previously approved guidelines for such an award. Crncevich v. Georgetown Recreation Corp., 168 Mont. 113, 541 P.2d 56 (1975). * * *

> " * * *

> "The retainer agreement between plaintiff and her attorney does not conform to the above requirements. The result of the negotiations between an attorney and his client as to their fee agreement is not controlling in fixing a reasonable attorney fee to assess against the opposing party. Such an award must be determined in accordance with the guidelines enumerated in Crncevich."

This case warrants the same result. The award must be based in accordance with the guidelines enumerated in Crncevich.

For the above reasons, this case is remanded for a redetermination of the amount of damages arising under the contract.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices